2015- 15-1899 (Lead), -1901-1903-1904

IN THE
# United States Court of Appeals for the Federal Circuit

CHANGZHOU HAWD FLOORING CO., LTD., DUNHUA CITY JISEN WOOD
INDUSTRY CO., LTD., DUNHUA CITY DEXIN WOOD INDUSTRY CO., LTD.,
DALIAN HUILONG WOODEN PRODUCTS CO., LTD., KUNSHAN
YINGYI-NATURE WOOD INDUSTRY CO., LTD., KARLY WOOD PRODUCT
LIMITED, FINE FURNITURE (SHANGHAI) LIMITED, LUMBER LIQUIDATORS
SERVICES, LLC, ARMSTRONG WOOD PRODUCTS (KUNSHAN) CO., LTD.,
                                                    Plaintiffs-Appellants,

HOME LEGEND, LLC,

                                                    Plaintiff,

v.

UNITED STATES, THE COALITION FOR AMERICAN HARDWOOD PARITY,
                                                    Defendants-Appellees.

Appeal from the United States Court of International Trade in
No: 1:12-cv-00020, Judge Donald C. Pogue.

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS CHANGZHOU HAWD
FLOORING CO., LTD., DUNHUA CITY JISEN WOOD INDUSTRY CO.,
LTD., DUNHUA CITY DEXIN WOOD INDUSTRY CO., LTD., DALIAN
HUILONG WOODEN PRODUCTS CO., LTD., KUNSHUAN
YINGYI-NATURE WOOD INDUSTRY CO., LTD.,
AND KARLY WOOD PRODUCT LIMITED**

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**DeKieffer & Horgan, PLLC**
1455 Pennsylvania Avenue, NW, Suite 900-B
Washington, DC 20005
(202) 783-6900
*Counsel for Plaintiffs-Appellants*                November 4, 2015

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Changzhou Hawd Flooring Co Ltd.  v.  United States

No. 15-1899 (Lead)

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Gregory S. Menegaz_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Changzhou Hawd Flooring Co., Ltd.,
Dunhua City Jisen Wood Industry Co., Ltd.,
Dunhua City Dexin Wood Industry Co., Ltd.,
Dalian Huilong Wooden Products Co., Ltd.,
Kunshan Yingyi-Nature Wood Industry Co., Ltd,
Karly Wood Product Limited

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The parties listed under No. 1 above are the real parties in interest.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Gregory S. Menegaz, J. Kevin Horgan, Alexandra H. Salzman, deKieffer & Horgan, PLLC, 1455 Pennslyvania Avenue NW, Suite 900B, Washington, D.C. 20004

11/4/2015_____                    /s/ Gregory S. Menegaz_____
            Date                                                    Signature of counsel

                                                            Gregory S. Menegaz_____
                                                                Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................2

PROCEDURAL HISTORY....................................................................4

STATEMENT OF THE CASE................................................................5

STATEMENT OF FACTS .....................................................................8

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT .......................................................................................18

I.      Standards of Review ................................................................18

        a.      The Arbitrary and Capricious Standard .............................19

        b.      The Substantial Evidence Standard.....................................19

        c.      The "Contrary to Law" Standard ........................................22

II.     Statutory Framework ...............................................................22

        a.      The General Rule for Calculating the All Others Rate .......25

        b.      The Exception to the General Rule for Calculating the All Others
                Rate   ..................................................................................26

III.    Commerce Failed to Establish, Based Upon Substantial Record
        Evidence, That the "Expected Method" Was Not Reasonable In This
        Case.   ..........................................................................................28

IV.     Commerce Acted Contrary to Law and Otherwise Unreasonably by
        Relying on Subsequent Annual Administrative Reviews to Support its
        Investigation Separate Rate. .......................................................33

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............39

# TABLE OF AUTHORITIES

## CASES

*Albemarle Corp. et al. v United States,* 931 F. Supp. 2d 1280 (Ct. Int'l Trade 2013) ........................................................................................35

*Allied Pac. Food (Dalian) Co. v. United States*, 435 F. Supp. 2d 1295 (2006) ........................................................................................................22

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) .............20, 29

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, 925 F. Supp. 2d 1332 (Ct. Int'l Trade 2013).................................................................4, 11

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014)..........................................................4, 12, 28

*Changzhou Hawd Flooring Co. v. United States*, 6 F. Supp. 3d 1358 (Ct. Int'l Trade 2014)...........................................................................4, 13

*Changzhou Hawd Flooring Co., Ltd. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015)......................................................................4, 13, 34

*Changzhou Hawd Flooring Co., Ltd., et al. v. United States*, 77 F. Supp. 3d 1351 (Ct. Int'l Trade 2015)...............................................................*passim*

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) ........................20

*Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008). ........................................................................................................19

*Diversified Products Corp. v. United States*, 6 CIT 155, 161, 572 F. Supp. 883 (1983) ................................................................................................20

*Dorbest Ltd. v. United States*, 462 F. Supp. 2d 1262 (2006)...................................21

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997).....................21

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323 (2006) .......................21

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ...............................................................24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........................................................................................................19

*Peer Bearing Co. - Changshan v. United States*, 587 F. Supp. 2d 1319 (Ct. Int'l Trade 2008) ........................................................................................31

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990).............16, 22

*Sigma Corp. v. United States*, 117 F.3d 1401 (Fed. Cir. 1997)...............................24

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) ....................26

*Union Steel v. United States*, 823 F. Supp. 2d 1346 (Ct. Int'l Trade 2012) *aff'd* 713 F.3d 1101 (Fed. Cir. 2013) ................................................................ 36-37

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ................................. 20-21

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)........................20

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ........................................................................................ 16-17, 30

## STATUTES

19 U.S.C. § 1516a ....................................................................................................1

19 U.S.C. § 1516a(a)(2)(A)(i)(II) ..........................................................................10

19 U.S.C. § 1516a(a)(2)(B)(i)..................................................................................10

19 U.S.C. § 1516a(b)(l)(A) ......................................................................................19

19 U.S.C. § 1516a(b)(l)(B) ......................................................................................20

19 U.S.C. §1516a(b)(2)(A) ......................................................................................33

19 U.S.C. § 1673d (a)(1)...........................................................................................22

19 U.S.C. § 1673d (c)(1)(B)(i)(I)..............................................................................23

19 U.S.C. § 1673d (c)(1)(B)(i)(II) ............................................................................23

19 U.S.C. § 1673d(c)(5).................................................................................*passim*

19 U.S.C § 1673d(c)(5)(B) ..............................................................11, 25

19 U.S.C. § 1677b(c)(1) ...........................................................................21

19 U.S.C. § 1677f-1(c)(2)(B) .......................................................................8

19 U.S.C. § 3512(d) ................................................................................26

28 U.S.C. § 1295(a)(5) ..............................................................................1

28 U.S.C. § 1581(c) .................................................................................1

## ADMINISTRATIVE DECISIONS

*Multilayered Wood Flooring from the People's Republic of China*, 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18, 2010) ......................................8

*Multilayered Wood Flooring from the People's Republic of China*, 76 Fed. Reg. 30,656 (Dep't Commerce May 26, 2011) ................................... 8-9

*Multilayered Wood Flooring From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) ..................................................................9, 25

*Multilayered Wood Flooring From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76,690 (Dep't Commerce Dec. 8, 2011) ...........................................................................................10, 25

*Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony With the Final Determination and Amended Final Determination of the Antidumping Duty Investigation*, 79 Fed. Reg. 25,109 (May 2, 2014) ...............................................................26

*Multilayered Wood Flooring from the People's Republic of China*, 79 Fed. Reg. 26,712 (Dep't Commerce May 9, 2014) .......................................12

*Multilayered Wood Flooring from the People's Republic of China*, 79 Fed. Reg. 35,314 (Dep't Commerce June 20, 2014) ...................................13

*Polyethylene Retail Carrier Bags from Thailand*, 79 Fed. Reg. 33,505 (Dep't of Commerce June 11, 2014) ..........................................................23

**OTHER AUTHORITIES**

*Statement of Administrative Action*, accompanying H.R. Rep. No. 103-826(I) (1994), reprinted in 1994 U.S.C.C.A.N. 4040 .................................................. 26-27

## STATEMENT OF RELATED CASES

In response to Federal Circuit Rule 47.5(a), Plaintiffs-Appellants are not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this court or any other appellate court other than the actions consolidated in herein: Court No. 15-1899 (*Changzhou Hawd Flooring Co., Ltd., et al. v. U.S.*), 15-1901 (*Fine Furniture (Shanghai) Limited v. U.S.*), 15-1903 (*Lumber Liquidators Services, LLC v. U.S.*), and 15-1904 (*Armstrong Wood Products (Kunshan) Co., Ltd. v. U.S.*).

## JURISDICTIONAL STATEMENT

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(5), as an appeal from the U.S. Court of International Trade.   The Trade Court had jurisdiction under 28 U.S.C. § 1581(c), which gives the Trade Court jurisdiction over any action commenced with respect to final Commerce Department determinations under 19 U.S.C. § 1516a.

This appeal is timely.   Plaintiffs-Appellants Changzhou Hawd Flooring Co., Ltd., et al. (collectively "Changzhou Hawd Flooring Plaintiffs") filed its notice of appeal on July 31, 2015, within 60 days of the Trade Court's final judgment issued on July 6, 2014, in *Changzhou Hawd Flooring Co., Ltd., et al. v. United States*, 77 F. Supp. 3d 1351 (Ct. Int'l Trade 2015).   Similarly, the other consolidated plaintiffs also filed their notices of appeal either on July 31, 2015 and August 4,

2015, within 60 days of the Trade Court's final judgment issued on July 6, 2015.

## STATEMENT OF THE ISSUES

This case presents the following issues:

Whether Commerce adopted a reasonable method of calculating the "all others" or "separate" rate for cooperating Chinese exporter Plaintiff-Appellants who established that they did not operate under Chinese Government control pursuant to the guidance set forth in 19 U.S.C. § 1673d(c)(5) in light of the facts that (1) the Commerce assigned all three individually examined respondents in the investigation *de minimis* rates; (2) a voluntary respondent filed all of its cost and sales data and maintains that it too would have earned a *de minimis* rate under the rules and findings established in the investigation; (3) Commerce self-limited its examination of complete individual data to those three companies; and (4) the only other antidumping rate on the record of the investigation pertains to the so-called "PRC Entity" that Commerce presumes operates under state control and therefore is not eligible for an antidumping duty rate based upon individual review. The PRC Entity rate is not representative of the business experience or economic reality of privately controlled companies who cooperated in Commerce's antidumping proceeding.

Whether Commerce conducted a reasonable investigation of these so-called

2

"separate rate" exporters when Commerce dithered for years in the remand process, alternatively arguing that it did not have the resources to review any new data but that it must do a complete review of Changzhou Hawd Flooring in particular, even as it already had the full data of Fine Furniture (Shanghai) Limited as a voluntary response but chose to ignore it.

Whether the Department acted contrary to law by relying on the record of subsequent reviews rather than relying on the record of the investigation at hand in ascertaining the reasonableness of the investigation rates.

Whether the lower Court acted contrary to law when it affirmed Commerce's finding on remand that the agency did not need to determine a precise rate for the separate rate companies based on the administrative record of the investigation.

Whether, if lawful, the Commerce's reliance on review results that involved significantly different methodologies and facts was reasonable to ascertain if the separate rate respondents' investigation costs and sales were represented by Commerce's self-selected mandatory respondents for individual review.

Whether Commerce has supported with substantial evidence on this record a rate higher than that indicated by the mandatory respondents.

Plaintiffs-Appellants maintain that none of Commerce's decisions in this regard were supported by substantial evidence or in accordance with law.

## PROCEDURAL HISTORY

This case involves the conclusions of five opinions by the trial court:

- *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 925 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) ("*Baroque Timber I*")

- *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) ("*Baroque Timber II*")

- *Changzhou Hawd Flooring Co. v. United States*, 6 F. Supp. 3d 1358 (Ct. Int'l Trade 2014) ("*Changzhou Hawd I*")

- *Changzhou Hawd Flooring Co., Ltd. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015) ("*Changzhou Hawd II*)

- *Changzhou Hawd Flooring Co. v. United States*, 77 F. Supp. 3d 1351 (Ct. Int'l Trade 2015) ("Changzhou *Hawd III*"), **Addendum 1**.

The opinions resulted in four remands to the Department of Commerce:

- Final Results of Redetermination filed by U.S. Department of Commerce Pursuant to Order (July 31, 2013) ("Remand I")

- Second Remand Results filed by U.S. Department of Commerce (March 31, 2014) ("Remand II")

- Third Remand Results filed by U.S. Department of Commerce (August 14, 2014) ("Remand III")

- Fourth Remand Results filed by U.S. Department of Commerce (January 23, 2015) ("Remand IV")

## STATEMENT OF THE CASE

This appeal arises out of the 2009-2010 antidumping investigation of multilayered wood flooring from China ("MLWF").   The three investigated mandatory respondents earned *de minimis* antidumping margins, either through the investigation or the subsequent appeals.   Plaintiffs-Appellants are non-individually examined cooperating exporters who were assigned above-*de minimis* rates by Commerce in various remand redeterminations, including the fourth and final redetermination.   As such, Plaintiffs-Appellants are quasi-permanently included within the antidumping duty order on MLWF from China (*i.e.,* until such time that the order would terminate upon sunset or changed circumstances at some undetermined point in the future).   Plaintiffs-Appellants are aggrieved by agency action because, as they maintain in this appeal, substantial evidence cannot support the assignment of an AD rate in excess of *de minimis* to them on the existing administrative record of the investigation.

Plaintiffs-Appellants take this appeal from the collection of lower court

orders and opinions that adjudicated various aspects of their appeals, cumulating in *Changzhou Hawd Flooring III*.   These, in turn, address four separate remand redeterminations, wherein the agency went to extraordinary lengths not to attribute the *de minimis* margins it found for the mandatory respondents to the non-individually examined cooperating exporters.

The gravamen of the Separate Rate Appellants' claims on appeal is that it is not reasonable to assign a separate rate above *de minimis* when (1) all the individually reviewed companies' rates were *de minimis*, (2) a voluntary respondent in the investigation (Fine Furniture) that is presumably representative further of the pool of companies not selected by the Department for individual review submitted voluminous data that supports a *de minimis* rate, and (3) the only other rate of record pertains to the so-called "PRC Entity," presumably operating under state control such that it is ineligible for an antidumping duty rate based on individual review and that is not in any way representative of cooperating privately controlled companies' business experience or economic reality.

As explained in detail under the "Statutory Framework" and Argument sections of this brief, the law and legislative history create a presumption that Commerce would rely upon the rates of the individually examined exporters to establish the rate for the non-examined exporters.   *See e.g.,* 19 U.S.C. §

1673d(c)(5).    In this case, Commerce did not rely solely on the rates of the individually examined exporters to establish the rate for the non-examined exporters, but could not point to substantial evidence on the record to rebut this presumed method of most accurately calculating the non-examined exporters' AD margins.

Commerce ignored the substantial evidence of the three largest exporters and the voluntary respondent, Fine Furniture, on the record that suggested that levels of dumping in the period of investigation ("POI") were *de minimis*.    In place of hard record evidence, Commerce substituted pure speculation concerning the PRC-wide Entity that did not participate in the investigation to presume that non-examined cooperating exporters were dumping at levels above *de minimis* in the investigation.    In so doing, Commerce applied an adverse inference against the fully cooperating separate rate exporters as a group, including Plaintiffs-Appellants, by attributing a purely speculative above-*de minimis* rate to the separate rate exporters.

Plaintiff-Appellants seek remand with instructions that Commerce calculate their separate rate based strictly on substantial record evidence of the investigation alone, in the most accurate manner possible and without the application of adverse inferences.

## STATEMENT OF FACTS

This dispute originates in a petition by the Coalition for American Hardwood Parity ("CAHP") alleging that imports of multilayered wood flooring from the PRC were being dumped in the United States. In response, Commerce initiated an antidumping duty investigation for the period of April 1, 2010 through September 30, 2010. *Multilayered Wood Flooring from the People's Republic of China*, 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18, 2010) (initiation of antidumping duty investigation) ("*Initiation Notice*"), **JA100001-07**.   Commerce indicated that it would select mandatory respondents based on quantity and value ("Q&V") questionnaires. *Id.* at 70,717.   Commerce requested Q&V data from 190 companies and received timely responses from 80, including Plaintiffs-Appellants. *Multilayered Wood Flooring from the People's Republic of China*, 76 Fed. Reg. 30,656, 30,657 (Dep't Commerce May 26, 2011) (preliminary determination of sales at less than fair value) ("*Preliminary Determination*"), **JA101423-34**.   From these, Commerce selected three mandatory respondents, the largest cooperating exporters (by volume) of wood flooring, for the investigation: Zhejiang Yuhua Timber Co., Ltd. ("Yuhua"), Zhejiang Layo Wood Industry Co., Ltd. ("Layo"), and the Samling Group ("Samling"). *Id.* at 30,658; *see also* 19 U.S.C. § 1677f-1(c)(2)(B).   Those companies that failed to respond to Commerce's Q&V

8

questionnaire were treated as part of the PRC-wide entity.   *Preliminary Determination* at 30,661.

In addition, because this was a non-market economy ("NME") investigation, Commerce invited those exporters and producers seeking a separate rate to submit a separate-rate status application.   Commerce received timely-filed separate-rate applications from 74 companies, including Plaintiffs-Appellants, all of whom demonstrated their independence from the Chinese government and their eligibility for separate rate status.   *See* Separate Rate Applications for Plaintiffs-Appellants, **JA100016-34** (Changzhou Hawd), **JA100078-99** (Jisen Wood); **JA100166-84** (Dexin Wood), **JA100231-50** (Dalian Huilong); **JA100307-27** (Yingi-Nature), **JA100366-85** (Karly Wood) (SRA cover pages and lists of exhibits; the lengthy questionnaire responses that are a part of the separate rate application concern the companies' corporate organization and selling practices for Commerce to assess whether the companies qualify as "separate" from the so-called "PRC-wide Entity" that receives an adverse, PRC-wide Entity rate.)   The finding that Plaintiff-Appellants qualified for a separate rate is not contested by any party in this litigation.   *Multilayered Wood Flooring From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318, 64,323 (Dep't Commerce Oct. 18, 2011) ("*Final Determination*") and

9

accompanying antidumping duty order published as *Multilayered Wood Flooring From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76,690, 76,692-93 (Dep't Commerce Dec. 8, 2011) ("*Antidumping Duty Order*") (listing each SRA qualifying exporter).

In its *Final Determination*, Commerce found that multilayered wood flooring was being dumped in the United States. *Id.* at 64,323-24.  Commerce found a *de minimis* dumping margin for Yuhua and assigned margins of 3.98 percent and 2.63 percent to Layo and Samling, respectively. *Id.* Commerce assigned an adverse facts available ("AFA") rate of 58.84 percent to the PRC-wide entity, which consisted of the Chinese companies that did not respond to the Department's Q&V questionnaire or other requests for information.   *Id.* at 64,322. Commerce then assigned the separate rate respondents a rate of 3.31 percent. *Id*. This rate was the simple average of Layo and Samling's margins. *I&D Memo*, cmt. 11 at 51, **JA101771-72**.

Appellants sought judicial review of the *Final Determination* pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i), claiming that, on several grounds, the antidumping duty margin for Layo and Samling should be recalculated, and, if the revised antidumping duty rate for Layo and Samling was

*de minimis*, the corresponding antidumping duty margins of the separate rate companies should be recalculated as *de minimis* and antidumping duty order for Layo, Samling, and the separate rate companies should be revoked.   *See Changzhou Hawd Flooring Co., Ltd*., *et al. v. United States*, Complaint in CIT Ct. No. 12-00020, ECF No. 9 (Feb. 8, 2012), **JA101847-62**.

During the course of the litigation below, the CIT remanded several surrogate value ("SV") issues pertaining to Layo and Samling to Commerce for reconsideration.   *Baroque Timber I*, 925 F. Supp. 2d at 1337; *see also Remand I* at 1-2, **JA101916-17**.

In its *Remand I*, Commerce revised its findings as required by *Baroque I*, making changes in the calculation of Layo's and Samling's antidumping margins that resulted in a zero margin for these two companies.   At the same time, Commerce revised its AFA rate for the PRC-Wide Entity downwards to 25.62.

As a result of these changes, not only Yuhua, but also Layo and Samling received dumping margins of zero. *Id.* at 26, **JA101941**. The changes to Layo and Samling's SVs resulted in a new calculated highest transaction-specific rate of 25.62 percent. Commerce selected this rate as the revised AFA rate for the PRC-wide entity. *Id.* at 27, **JA101942**.   Because all the mandatory rates were zero, Commerce chose to recalculate the separate rate under 19 U.S.C § 1673d(c)(5)(B)'s

11

"any reasonable method provision," taking a simple average of the three mandatory rates of zero and the AFA rate.   This resulted in a separate rate of 6.41 percent, *id.,* thereby increasing the separate respondents' rate while each of the components of that rate decreased.

The lower court found that in this case Commerce's decision was unsupported by substantial evidence, because Commerce had failed to articulate a rational connection between the separate rate companies' economic reality and the use of the AFA rate in the calculation of their rate.   *Baroque Timber II*, F. Supp. 2d at 1344-45.   ("Commerce made a choice to use a method that increased the separate rate both from the zero that would have resulted from the expected method and from the 3.31 percent in Commerce's original determination.")   The court accordingly remanded to Commerce for a redetermination of the separate rate. <u>Id</u>. at 1346.

Between the second remand and the corresponding redetermination, Commerce issued the final determination in the first administrative review following the investigation at issue here.   *Multilayered Wood Flooring from the People's Republic of China*, 79 Fed. Reg. 26,712 (Dep't Commerce May 9, 2014) (final results of AD admin. rev., 2011-2012) and *Multilayered Wood Flooring from the People's Republic of China*, 79 Fed. Reg. 35,314 (Dep't Commerce June 20,

12

2014) (amended final results of AD admin. rev., 2011-2012).   Appellants Jisen

Wood, Dexin Wood, Huilong, Yingyi-Nature, and Karly Wood certified their

separate rate status in the first administrative review; Appellant Changzhou Hawd

had no shipments during the first review period and, therefore, no change was

made in its dumping margin from the investigation.   For the separate rate

companies participating in the first review, Commerce assigned an antidumping

duty rate of 5.92 percent, which was the calculated dumping margin of one of the

mandatory respondents.   The other two mandatory respondents received a

dumping margin of 0.00%.

In its *Remand II* Commerce found it unnecessary to recalculate an exact rate

from the investigation for separate rate respondents, inferring that because there

were 110 non-cooperative respondents in the investigation, the appropriate

separate rate for the investigation was more than *de minimis*.   Commerce thus

assigned Appellants Jisen Wood, Dexin Wood, Huilong, Yingyi-Nature, and Karly

Wood an investigation rate calculated for them in the first administrative review

(as limited by the provisional measures deposit cap). *Remand II*, ECF No. 52, at

6-8, **JA102099-102**.   For Appellant Changzhou Hawd, who certified no shipments,

Commerce concluded that it did not have enough data on the record to calculate a

rate reflective of that company's economic reality and initiated an individual

13

investigation of this eighth respondent.   *Id.* at 8-9, **JA102101-102**.

The *Remand II* was challenged in extensive briefing before the lower court, and Commerce was granted a partial voluntary remand "to determine whether it should conduct a limited investigation of Changzhou Hawd.   *Changzhou Hawd I*, 6 F. Supp. 3d at 1362.   This third remand was ultimately a pointless exercise. Commerce decided that it was unable to conduct a "limited investigation," and reaffirmed its results and reasoning in the employed in the *Remand II*.   ("We find that the best available method for determining the margins to be assigned to the separate rate respondents is the method explained in the Department's second remand redetermination for all the reasons discussed therein.")   *See Remand III*, ECF No. 107, at 17, **JA102258**.

The lower court then affirmed as reasonable Commerce's inference of a more than *de minimis* separate rate and use of rates from the First Administrative Review, *Changzhou Hawd II*, 44 F. Supp. 3d at 1385-88, it found Commerce's decision to individually investigate Changzhou Hawd at such a late date in the proceeding — and after repeatedly refusing to investigate a would-be voluntary respondent, claiming lack of administrative resources — to be arbitrary and capricious, and remanded accordingly.   *Id.* at 1388-91.

On remand, Commerce again inferred that the separate rate was more than

14

*de minimis*, but declined, as it did previously, to calculate a separate rate. *Remand IV*, ECF No. 130, at 4-5, **JA102302-03**. Instead, because of "the limited time for which Changzhou Hawd's specific margin will be effective, and in the continued interest of conserving administrative resources," Commerce has proposed to continue applying the 3.30 percent cash deposit rate as calculated in the investigation, until the final results are determined in the second administrative review, in which Changzhou Hawd is again a separate rate respondent. *Remand IV*, ECF No. 130, at 5-6, **JA102303-04**.   The lower court affirmed this fourth remand redetermination, finding that "Commerce's inference of a more than de minimis separate rate remains supported by substantial evidence" and "{r}egardless of the precise rate calculated, Changzhou Hawd remains subject to the AD duty order because its rate, the separate rate, is reasonably more than de minimis." *Changzhou Hawd III*, 77 F. Supp 3d at 1359-1360.

## SUMMARY OF THE ARGUMENT

Commerce limited its individual review of exporters' detailed cost and sales data to merely three out of 74 cooperating exporters, refusing even to take one voluntary respondent (Fine Furniture).   Commerce then used its own decision to limit the scope of its investigation against Plaintiffs-Appellants by applying adverse inferences drawn against an entity or entity Commerce knows nothing

15

about instead of relying on the representative data of other cooperating exporters or instead of conducting a reasonable limited investigation of the non-individually examined exporters to determine the representativeness of the examined exporters for purposes of establishing Plaintiffs-Appellants' *investigation* AD margins.

The statute and official legislative history to the Uruguay Round Amendments to the antidumping duty laws indicate that Commerce can use any reasonable method to calculate the rate for non-examined exporters where the examined exporters all get *de minimis* rates, but the case law indicates that AD margins must be calculated as accurately as possible. *See, e.g., Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("*Bestpak*"); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The legislative history further clarifies that the Congress expected Commerce to rely upon the weighted average of the examined exporters as the "expected" method to calculate the other rates. In this case, Commerce has turned the statute and legislative history on its head, avoiding at all cost the logical consequences of its own decision to limit its investigation and the result of that investigation, *i.e.,* the universal de minimis rates of the individually examined companies.

This Court's previous holdings bar Commerce from drawing any inferences

at all about the non-examined PRC-Wide entity to attribute to cooperating non-state controlled exporters.   *See Bestpak*, 716 F.3d at 1379 ("The record here is so thin that Commerce could neither have reached a valid decision nor reasonably have found evidence to support the determination that Bestpak deserves a margin that more than doubles the import's sales price.")

At a minimum, this Court has required Commerce to solicit more information from the separate rate exporter before simply concluding that such exporter's costs and sales are comparable to a state-controlled entity about which Commerce knows nothing rather than the examined cooperating mandatory respondent exporter.   *Id.* at 1380.   For this reason alone, Commerce's redetermined separate rate was contrary to law.

In any event, Commerce cannot point to any record evidence, much less the required substantial record evidence for it to shun the calculation method expected under the law.

Finally, Commerce did not conduct a reasonable investigation of Plaintiffs-Appellants, either in the course of the investigation or throughout the lengthy and multiple remand proceedings.   Commerce first claimed it lacked the resources to individually investigate any additional exporters.   Next, Commerce claimed that it need not investigate most exporters in this appeal, citing instead to

17

future review results in POR 1 using radically different calculating methodologies to suggest that they were dumping in the investigation.    With respect to a single exporter, Changzhou Hawd Flooring, Commerce concluded that it needed to investigate that company anew because it had no POR 1 sales. The trial court disagreed but by the time Commerce's remand redetermination, there were results of the second POR that Commerce pointed to as obviating its need to investigate Changzhou Hawd Flooring at all.    *Remand IV* at 8.    Ultimately, the trial court permitted the Department to draw inferences concerning the PRC-wide Entity's dumping rate in the investigation, though it was not participating or the dumping rates of participating exporters from future segments to conclude that Plaintiffs-Appellants themselves were dumping in the period of *investigation*. Plaintiffs-Appellants maintain this was unlawful and certainly an unreasonable method of calculating their investigation AD rate.

## ARGUMENT

### I.    Standards of Review

When reviewing the Court of International Trade's judgment concerning a final determination of Commerce, this Court reapplies the Court of International Trade's standard of review. In reviewing Commerce's antidumping determinations, this court's review consists of a *de novo* review of the agency's actions rather than

merely reviewing the adequacy of the lower court's decision.    There are different standards of review applicable to the issues in this case.

### a.  The Arbitrary and Capricious Standard

This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion[1].    *See* 19 U.S.C. § 1516a(b)(l)(A). Normally, an agency decision would be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### b.  The Substantial Evidence Standard

This Court also invalidates determinations, findings or conclusions of Commerce that were "unsupported by substantial evidence on the record, or

---

[1]  The court has clarified:
> The "arbitrary, capricious, [or] abuse of discretion standard" combines two "roughly equivalent" word formulas, 'arbitrary [or] capricious' and 'abuse of discretion.' 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.6 [1] (2d ed. 1997 & Supp. 2006).

*Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1353 (Ct. Int'l Trade

otherwise not in accordance with law."    *See* 19 U.S.C. § 1516a(b)(l)(B).

"[S]ubstantial evidence is more than a mere scintilla.    It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting*

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)).

Furthermore, "substantial evidence" must be measured by a review of the record as

a whole, "including whatever fairly detracts from the substantiality of the

evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir.

1984). Thus, "it is appropriate to set aside the ITA's decision when the court

'cannot conscientiously find that the evidence supporting that decision is

substantial, when viewed in the light that the record in its entirety furnishes,

including the body of evidence opposed to [its] view.'" *Diversified Products Corp.*

*v. United States*, 6 CIT 155, 161, 572 F. Supp. 883, 888 (1983) (*quoting Universal*

*Camera*, 340 U.S. at 488).

    Moreover, the Department's determination cannot be based on "isolated

tidbits of data which suggest a result contrary to the clear weight of the evidence."

*USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).    The

substantial evidence standard "requires more than mere assertion of 'evidence

_____

2008).

which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (*quoting Universal Camera*, 340 U.S. at 487).

The legal standard for selecting surrogate values for factors of production in particular requires even more of Commerce, mandating that Commerce use the "best available information" in assigning the surrogate values. *See* 19 U.S.C. § 1677b(c)(1); *Dorbest Ltd. v. United States*, 462 F. Supp. 2d 1262, 1268 (2006) (stating that the "term 'best available' is one of comparison, *i.e.*, the statute requires Commerce to select, from the information before it, the best data for calculating an accurate dumping margin") ("*Dorbest*"). As such, Commerce is required to do more than merely support one of possibly many reasonable choices: it must explain, based on substantial evidence, why its choice was the "best." The *Dorbest* Court concluded that "{o}n factual issues, the court's role 'is not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Dorbest* at 1269, *citing Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1327 (2006) (add'l citations omitted). The *Dorbest* Court further cautioned that {i}n doing so, Commerce must 'conduct a fair comparison of

the data sets on the record' with regard to its announced method or criteria." *Id.*,

citing *Allied Pac. Food (Dalian) Co. v. United States*, 435 F. Supp. 2d 1295,

1313-14 (2006).

### c. The "Contrary to Law" Standard

This Court will reverse any decision that is "not in accordance with law."

19 U.S.C. § 1516a(b)(l)(B).    This appellate Court has spoken on the key issues on

appeal.   If the agency decision contravenes this Court's jurisprudence then it is

reversible because the agency decision is "not in accordance with law."

All three of these standards must be placed in the overall context of the

mandate to Commerce to calculate antidumping duty margins as accurately as

possible.   *See Rhone-Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir.

1990).

## II.    Statutory Framework

This appeal arises from an original investigation.[2]    First, the antidumping

duty law generally requires the Department to establish an antidumping duty

margin rate for each exporter for which review is requested.    19 U.S.C. § 1673d

(a)(1) sets forth the general requirement that the Department must make a final

---

[2]  The rules governing annual administrative reviews of antidumping duty orders
are quite different in some respects and have different purposes as well.

determination (in the investigation) of whether subject merchandise is sold at less than fair value.    Section 1673d (c)(1)(B)(i) I & II specifically require that:    "The administering authority shall (I) determine the estimated weighted average dumping margin for each exporter and producer individually investigated, and (II) determine, in accordance with paragraph (5), the estimated all-others rate for all exporters and producers not individually investigated….") (referring to Section 1673d(c)(5)).

In investigations involving products from market economy countries, the statute provides an explicit method for determining the rate to assign to respondents not selected for individual examination (that is, the all-others rate). 19 U.S.C. § 1673d(c)(5).    The statute does not, however, answer whether the Department must use this method in reviews of market economy products, but the Department generally does so. *See, e.g.*, *Polyethylene Retail Carrier Bags from Thailand*, 79 Fed. Reg. 33,505, 33,505-06 (Dep't of Commerce June 11, 2014) (preliminary results of review), unchanged in 79 Fed. Reg. 51,953 (Dep't of Commerce Sept. 2, 2014).

In proceedings involving products from a nonmarket economy (NME) country, the statute is silent as to how Commerce establishes a rate for unselected respondents who establish their independence from the nonmarket economy

23

government (that is, the "separate" rate).    In NME proceedings, Commerce

presumes that all exporters and producers are controlled by the NME government,

unless the exporter or producer demonstrates its independence. *See* Policy Bulletin

05.1, *available at* http://enforcement.trade.gov/policy/bull05-1.pdf; *see also Sigma*

*Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997).    If a respondent

does not demonstrate its independence, it receives the NME-wide entity rate. *See*

Policy Bulletin 05.1. If a respondent demonstrates its independence, it is eligible

for a separate rate. *Id.*    Plaintiff-Appellants note that the creation of a different

category of respondents not individually investigated (i.e., the "separate" rather

than the "all others" rate exporters contemplated by statute) is merely a policy—a

creation of the Department's; and is not grounded in the statute.    *See Jiangsu*

*Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317, 1339

(Ct. Int'l Trade 2014) (noting that while "the presumption of NME government

control is a policy within the Department's discretion, . . . its application must

necessarily be as fact-intensive and as flexible as possible." ).

Under this policy, an exporter demonstrates its independence from the NME

government by filing a separate rate application ("SRA") (if it claims its

independence for the first time in the subject segment) or a certification (if it

established its independence in a prior segment). *Id.* Because this was an original

investigation, it was only possible to file the full SRA.    Unless Commerce requests additional information, the record generally will not contain any other data for such exporters, except for the volume of their subject merchandise exports to the United States.    Each Plaintiff-Appellant filed such an SRA and was deemed independent from the NME government, *i.e.,* separate, legally and factually, from the "PRC-wide Entity" in the final determination (the PRC being the NME government of the country under investigation).    *See Final Determination* and *Antidumping Duty Order*, listing each SRA qualifying exporter.

### a.  The General Rule for Calculating the All Others Rate

The general rule in the market economy investigation statute directs Commerce to establish the all-others rate by averaging the margins calculated for exporters and producers individually investigated, excluding any margins that are zero, *de minimis*, or based entirely upon facts available. 19 U.S.C. § 1673d(c)(5)(A).   If all margins are zero, *de minimis*, or based entirely upon facts available, the statute provides an exception that permits Commerce to use "any reasonable method to establish the estimated the all-others rate . . . , including averaging" the margins determined for the individually investigated exporters and producers. 19 U.S.C. § 1673d(c)(5)(B).

25

The three mandatory, or individually investigated exporters earned de minimis rates either in the investigation or through earlier proceedings before the U.S. Court of International Trade when all these cases were consolidated.   *See Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony With the Final Determination and Amended Final Determination of the Antidumping Duty Investigation*, 79 Fed. Reg. 25,109 (May 2, 2014) (whereby it is memorialized that the last two of the three mandatory respondents earned *de minimis* rates).   Thus, the "exception" to the general rule is implicated in the investigation; and the Department's interpretation of the "exception" is central to this appeal.

### b.  The Exception to the General Rule for Calculating the All Others Rate

The Statement of Administrative Action ("SAA")[3]  provides additional guidance with respect to the "exception," as it explains changes to the way the "all

---

[3]  *Statement of Administrative Action*, accompanying H.R. Rep. No. 103-826(I) (1994), reprinted in 1994 U.S.C.C.A.N. 4040.   The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements Act] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354 n.2 (Fed. Cir. 2005).

others" rate should be assigned based on amendments to the international

Antidumping Agreement in the wake of the Uruguay Round Trade Negotiations:

> (2) All Others Rate
> Recognizing the impracticality of examining all producers and
> exporters in all cases, Article 9.4 of the Antidumping Agreement
> permits the use of an all others rate to be applied to <u>non-investigated</u>
> <u>firms</u>…
>
> \*       \*       \*       \*
>
> Section 219(b) of the bill adds new section 735(c)(5)(B) which
> provides an exception to the general rule if the dumping margins for
> all of the exporters and producers that are <u>individually investigated</u> are
> determined entirely on the basis of the facts available or are zero or de
> minimis.   In such situations, Commerce may use any reasonable
> method to calculate the all others rate.   The <u>expected</u> <u>method</u> in such
> cases will be to weight-average the zero and de minimis margins and
> margins determined pursuant to the facts available, provided that
> volume data is available.   However, if this method is not feasible, or
> if it results in an average that would not be reasonably reflective of
> potential dumping margins for non-investigated exporters or
> producers, Commerce may use other reasonable methods.

SAA at 873 (emphasis supplied).

The SAA thus explains that, under the exception, the "expected method" is

to average the margins determined for the individually investigated respondents,

provided that "volume data is available," unless it is not "feasible" to do so, or if

the resulting margin "would not be reasonably reflective of potential dumping

margins." SAA at 873 (1994), *reprinted in* 1994 U.S.C.A.A.N. 4040, 4201.10.

The Department's redetermination, approved by the trial court, not to rely

upon the "expected" method is what gave rise to this appeal.     Plaintiffs-Appellants set forth their arguments as to why the redetermined separate rate is unsupported by substantial evidence and contrary to law below. The lower court repeated Commerce's errors of (1) relying on the non-participation of unknown entities to infer AD margins Plaintiffs-Appellants and (2) relying on AD margins found in later reviews also on appeal to justify investigation AD margins.

III.     **Commerce Failed to Establish, Based Upon Substantial Record Evidence, That the "Expected Method" Was Not Reasonable In This Case.**

The statute and the SAA indicate that the "expected" or normal method to estimate/calculate the separate rate is by weight-averaging the margins of the individually examined respondents, who, in this case, were the three largest exporters participating in the case that all earned de minimis margins, *i.e.,* margins to some degree or extent below 2.0%.     Indeed, it is clear that Commerce and the trial court relied heavily on the SAA in finding that Commerce could avoid the expected method.     Having imparted such significance to the SAA, Commerce could not then ignore the clear meaning of the further guidance provided therein that the expected method was to rely upon the margins of the individually examined.     *See, e.g., Baroque Timber II*, 971 F.Supp. 2d 1333, 1340, n. 21.

As explained above, it is fundamental that Commerce's decisions must be

based on substantial evidence on the record.   The "record" before the agency at the time of the final determination was the record of the investigation; not the record of future reviews.   Commerce can only point to a single fact on the record of the investigation to support the assignment of above-de minimis rates to Plaintiffs-Appellants:   that a large number of entities identified by petitioner did not participate in the investigation.   However, jurisprudence precludes such an inference.

The courts have rightly insisted that an agency may not rely on pure speculation in drawing conclusions from the record evidence (or lack thereof). *See, e.g., Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).   In this case, no record information exists concerning the entity or entities that did not respond to Commerce's Q&V questionnaire.   There are all manner of legitimate possible explanations for their non-participation, but no such explanations, one way or another, on the record.   Yet, despite this lack of evidence, Commerce assumes: (1) at least one of these entities could have participated; (2) it could have established its independence of Chinese government control; (3) its quantity of subject exports would have been ranked in the top three exporters, triggering mandatory respondent status; and that, unlike the four companies whose detailed information is on the record (4) it was dumping.

Plaintiffs-Appellants submit that this is pure speculation supported by no record evidence whatsoever.

This Court, in *Bestpak*, confronted a very similar situation when Commerce used the non-cooperation of one mandatory respondent merged into the PRC-Wide Entity for its failure to affirmatively establish independence from state control to infer a certain level of dumping on cooperating separate rate respondents that the Commerce concluded it did not have the resources to review.   This Court held squarely that Commerce in fact knows nothing about the PRC-wide Entity.   *See generally, Bestpak*, 716 F.3d at 1379-1380.   Whether it was one division or 100 divisions is of no moment because, under Commerce's own policy, they are all merged into and treated as a single PRC-wide Entity.   This Court then ordered Commerce to instead take reasonable steps to find out if the cooperating non-examined company was more like the *de minimis* respondent or more like the PRC-wide Entity in its costs and sales practices.   Plaintiffs-Appellants asked for no more reasonable relief here but were denied the same or reasonable treatment. Of course, this case is more flagrant than in *Bestpak* because there are four non-State controlled companies on the record of this appeal instead of the single *de minimis* respondent that the *Bestpak* Court had to consider.

The Department did attempt to fully investigate one single separate rate

respondent in the remand process, Changzhou Hawd Flooring.   All appellants offered repeatedly over an extended period of time to present additional reasonably limited and reasonably burdensome information on the record to establish that they were more like the three mandatory de minimis respondents but their requests were unreasonably rebuked by Commerce.   The plain fact is that the Department sat and did nothing between August 29 and October 14 of 2014 to act on the comments, prompted by the trial court's instructions in telephonic conference. The Department did not agree with the comments, disagree with the comments, issue a request for additional comments, or hold a hearing on the comments.   The Department just sat silent and awaited the October 14, 2014 deadline to conclude by fiat that such further investigation was not feasible.   *See Remand III* at 17.

The trial court even agreed with Changzhou Hawd Flooring that it was arbitrary and capricious to conduct a full-blown review of that single company at such a late stage, particularly when Commerce itself limited respondents for a lack of Commerce resources and shunned the full set of data supplied during investigation by Fine Furniture.   *See Changzhou Hawd III,* 77 F. Supp. 3d at 1355.

Quite oddly then, the lower court punished Changzhou Hawd Flooring for attempting to avoid such arbitrary and capricious review:   "Changzhou Hawd Flooring, having eschewed individual investigation, is a separate rate respondent

31

and subject to the separate rate." *Id.* at 1359, n 29.   This decision was itself

arbitrary and capricious.   Changzhou Hawd Flooring was not contending that it

would prefer an arbitrary and penal separate rate over any form of investigation.

Rather, years into the review process, with the third review well underway, it

merely proposed more reasonable methods to ascertain if the rates of the

mandatory respondents were reasonably reflective of its rates.   Commerce was

given several opportunities by the Court to conduct such addition review but

choose, instead, to let the clock run on the first and second reviews so it could

point to them as justification for its investigation rate calculation.

Plaintiffs-Appellants discuss below why that decision, to rely on future reviews,

also was unreasonable and unlawful.

For the reasons set forth above, Plaintiffs-Appellants thus contend that

Commerce's remand redeterminations with respect to their investigation AD rates

were unsupported by substantial evidence and not otherwise in accordance with

law.   Commerce must be ordered to identify "substantial" evidence on the record

of the investigation itself as to why the rates of the three de-minimis individually

examined respondents were not representative of the rates of other cooperating

respondents free of state control.   In so doing, Commerce must take into account

the actual evidence filed on that record, which includes the full evidence of a

fourth potential major exporting respondent, Fine Furniture, as well as the detailed

separate rate applications of Plaintiffs-Appellants.

## IV.    Commerce Acted Contrary to Law and Otherwise Unreasonably by Relying on Subsequent Annual Administrative Reviews to Support its Investigation Separate Rate.

Remarkably, the lower court gave at least a passing nod to the established

principle of law that each segment of Commerce's proceedings is a record unto

itself, stating: "each period of investigation or review is a 'separate segment of

proceedings with its own unique facts.'    *See Changzhou Hawd III,* 77 F. Supp. 3d

at 1360, *citing Peer Bearing Co. - Changshan v. United States*, 587 F. Supp. 2d

1319, 1325 (Ct. Int'l Trade 2008); *see also* 19 U.S.C. §1516a(b)(2)(A) (defining

the administrative record as the evidence and argument placed before Commerce

within the context of one particular proceeding).    Yet, the lower court nonetheless

found Commerce's finding reasonable, based on the "evidentiary record," that if

dumping occurred during the review, . . . it is likely to have also occurred [in the

investigation], . . .."    *Changzhou Hawd III,* 77 F. Supp. 3d at 1359, 1360.    As

noted above, on the record of the investigation no evidence exists that a mandatory

respondent was dumping or that the separate rate respondents were like the specter

PRC-wide Entity company.    The so-called "silence of 110 respondents" is not

substantial record evidence that the cooperating separate rate respondents were

33

dumping.[4]  *See Changzhou Hawd III,* 77 F. Supp. 3d at 1359, quoting from its

third remand opinion, *Changzhou Hawd II*, 44 F. Supp. 3d at 1388-90.   Likewise,

the lower court acknowledges, as it must do, that the 3.30 rate assigned to

Changzhou Hawd Flooring was based on an amended final determination that itself

was overturned.   *Changzhou Hawd III,* 77 F. Supp. 3d at 1359-1360.   In other

words, that figure was essentially made up.

Recognizing the frailty of its opinion, the lower court buried in a footnote its

erroneous conclusion that Commerce did not rely on the rates from subsequent

reviews to calculate the separate rates challenged in this appeal.   *See Changzhou

Hawd III,* 77 F. Supp. 3d at 1358 n 28, *citing* to *Changzhou Hawd II*, 44 F. Supp.

3d at 1385-87. ("Commerce's inference of a greater than *de minimis* separate rate

is supported by substantial evidence, is not the equivalent of applying AFA to

separate rate respondents, and does not ***impermissibly*** consider rates from

subsequent stages, rather using them permissibly, for corroboration.").   {Emphasis

added.}   No reasonable reading of the lower court's opinions could reconcile with

this position.   The lower court spends page after page justifying the purely

speculative investigation rate assignments with reference to the first and second

---

[4]  The lower court ignores the inconvenient argument that under Commerce's own
policy only one potential respondent did not cooperate, the PRC-wide Entity.   All
potential exporters not affirmatively establishing their independence through

review results.   *See Changzhou Hawd III,* 77 F. Supp. 3d at 1357-1360.

Plaintiffs-Appellants maintain that bootstrapping the results of one segment—and

an investigation in particular—with results from subsequent segments is unlawful.

First, Commerce has supplanted one record with another, in violation of the

case law and statute cited above.   In another case, the trial court correctly ruled

that, in the interests of calculating margins as accurately as possible, as required,

the Department must focus on the findings in the segment at hand, stating:   "The

court concludes that Commerce must reconsider the margin it assigned to Shanxi

DMD, BPAC, and GHC. The $0.28/kg margin was not based on data pertaining to

any pricing behavior that occurred in the third POR. Nor was it based on any data

pertaining to these respondents; instead, Commerce reverted to a margin it

determined in *another* review for *other* respondents."   *Albemarle Corp. et al. v*

*United States,* Consol. Ct. No. 11-00451, 931 F. Supp. 2d 1280, 1291 (Ct. Int'l

Trade 2013) (wherein the Court remanded the exclusion of the *de minimis* rates of

the two mandatory respondents from the calculation of the separate rate and found

that the mandatory individually investigated respondents' rates were representative

of the industry for the period under review) ("*Albemarle Corp.*").

Second, this Court has established that the purpose and methodologies

---

timely filings are merged into that single entity by policy.

applied in investigations and reviews are significantly different.   *See Union Steel v. United States*, 823 F. Supp. 2d 1346 (Ct. Int'l Trade 2012) ("*Union Steel I*"), *aff'd* 713 F.3d 1101 (Fed. Cir. 2013) ("*Union Steel II*").   In *Union Steel*, the U.S. Court of Appeals upheld Commerce's practice of zeroing negative margins in reviews after Commerce itself had determined that zeroing in investigations was contrary to its statutory obligations.   The *Union Steel* Court relied upon Commerce's explanation that the purposes of reviews and investigations were different and justified different methodologies in calculating the antidumping duty margins therefrom:

> With an antidumping duty order already in place, administrative reviews typically use average-to-transaction comparison methodology which **permits greater specificity** to determine pricing behavior for individual transactions. *Id*. The greater specificity afforded through that methodology furthers the transactional accuracy interests of administrative review. *Union Steel, 823 F. Supp. 2d at 1359*. We agree with the Court of International Trade's explanation that this distinction is supported by statute: "Specificity is less important in investigations in that [product group (CONNUM)] averages in investigations are not even monthly averages, as they are in reviews. Rather, they are averages over a broad time period compared to all other broad averages." *Id*. (citing *19 U.S.C. § 1677f-1(d)*; *19 C.F.R. § 351.414(d)(3), (e)*). However, "when it comes to setting the final rates to be used for actual assessment, i.e., the review rates, it is reasonable for the agency to look for more accuracy, which it achieves in some measure through monthly averaging, and also for the agency to look for the full measure of duties resulting therefrom, which it better achieves through zeroing." *Id*.

*Union Steel v. United States*, 713 F.3d 1101, 1108 (Fed. Cir. 2013) ("*Union Steel*

*II*").[5]    Thus, as explained above, the export price to normal value comparison methodologies are radically different in reviews as compared to investigations. As a result, Commerce zeroed negative margins in the First and Second Review results of the MLWF segments but not in the investigation where it determined that all three individually reviewed respondents were not dumping at all.    For this reason alone, but certainly when considered in conjunction with the other reasons noted above, the Court should reject inferences drawn from the reviews to determine Plaintiffs-Appellants' economic reality.

The concept that determining a precise rate is unnecessary presupposes the very question that is on appeal: whether Commerce has supported with substantial evidence on this record a rate higher than that indicated by the mandatory respondents.    The investigation is associated with a higher *de minimis* standard and the law contemplates those exporters not dumping overall (*i.e.*, based on broad averages and offsetting negative margins) should not be subject to the perpetual discipline of the AD order.

The *Changzhou Hawd Flooring* Court got it exactly opposite and wrong:

---

[5] There were other important new methodologies that were applied in the reviews that did not apply to respondents in the POI.    For example, Commerce now deducts approximately 8% from export price for alleged unrefunded value added tax.    That issue was appealed from the First POR Final Results.    Either way, it is a very significant new policy, and the results of the reviews are not fairly compared

"Changzhou Hawd remains subject to the AD order because its rate, the separate rate, is reasonably more than *de minimis*."  *Changzhou Hawd III,* 77 F. Supp. 3d at 1360.   However, as this conclusion was drawn from review results and methodologies, which are on appeal, the lower court has essentially allowed review methodologies to be applied to an investigation governed by different laws, *i.e.*, investigation laws.   In short, dumping findings in reviews can never justify or stand in place of an investigation finding, based on investigation methodologies.

Changzhou Hawd Flooring moved for mandamus before the lower court on exactly this point but the lower court repeatedly found the issue moot.  *See, e.g., Changzhou Hawd III,* 77 F. Supp. 3d at 1354, n. 17.   The issue is not moot because Commerce was required by law to conduct an investigation.   Commerce declared that it lacked resources, essentially declared the investigation a nullity with respect to the separate rate companies it said it could not individually examine, and then based their investigation rates on review results and methodologies.   Quite simply, this Court should order Commerce to follow the trade statute and calculate the separate rate as accurately as possible based on investigation methodologies and the investigation record.

Commerce adopted other new controversial methodologies and surrogate

to or indicative of POI dumping.

value sources in the subsequent reviews that are themselves on appeal currently before the trial court.   In the second review, Commerce relied upon an entirely new surrogate country, favoring Thailand over the Philippines.   Thus, even if it were lawful to delay investigation calculations so that they could be bootstrapped with subsequent review results, it was unreasonable for Commerce to do so in this instance.   For all these reasons, Plaintiffs-Appellants submit that the assignment of their separate rates was contrary to law and unsupported by substantial evidence.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

In light of the foregoing, Plaintiffs-Appellants request that this Court enter judgment in their favor with respect to the methodology by which their investigation AD rate is calculated.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**DEKIEFFER & HORGAN, PLLC**
1455 Pennsylvania Avenue, NW
Suite 900-B
Washington, DC 20005
(202) 783-6900
*Counsel for Plaintiff-Appellant*

November 4, 2015

**ADDENDUM I**

UNITED STATES COURT OF INTERNATIONAL TRADE

CHANGZHOU HAWD FLOORING CO.,
LTD., *et al.*,

             Plaintiffs,

             v.

UNITED STATES,

             Defendant.

Before: Donald C. Pogue,
         Senior Judge

Court No. 12-00020

JUDGMENT

      This case having been duly submitted for decision; and
the court, after due deliberation, having rendered a decision
herein; Now therefore, in conformity with said decision, it is
hereby

      ORDERED, ADJUDGED, and DECREED that Multilayered Wood
Flooring from the People's Republic of China, 76 Fed. Reg.
76,690 (Dep't Commerce Dec. 8, 2011) (amended final
determination of sales at less than fair value and antidumping
duty order), as modified by the Final Results of Redetermination
Pursuant to Ct. Order, March 24, 2015, ECF No. 130, finding the
Plaintiff's antidumping duty margin is more than *de minimis*, is
AFFIRMED; and it is further

      ORDERED that the subject entries enjoined in this
action, see Ct. Order, ECF No. 43 (order granting motion for
preliminary injunction), are to be liquidated in accordance with

the final court decision, as provided for in Section 516A(e) of

the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e) (2012).


                                        /s/ Donald C. Pogue
                                        Donald C. Pogue, Senior Judge

Dated: July  6, 2015
       New York, NY



A   Neutral

As of: October 29, 2015 2:46 PM EDT

## *Changzhou Hawd Flooring Co. v. United States*

United States Court of International Trade

July 6, 2015, Decided

Court No. 12-00020

**Reporter**

77 F. Supp. 3d 1351; 2015 Ct. Intl. Trade LEXIS 72; 37 Int'l Trade Rep. (BNA) 1671; SLIP OP. 15-71

CHANGZHOU HAWD FLOORING CO., LTD., et al., Plaintiffs, v. UNITED STATES, Defendant.

**Prior History:** *Baroque Timber Indus. (Zhongshan) Co. v. United States, 853 F. Supp. 2d 1290, 2012 Ct. Intl. Trade LEXIS 92 (2012)*

**Disposition:** remand redetermination affirmed.

**Counsel:** [**1] Gregory S. Menegaz and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, DC, for the Plaintiff, Changzhou Hawd Flooring Co., Ltd.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel was Shana Hofstetter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

**Judges:** Before: Donald C. Pogue, Senior Judge.

**Opinion by:** Donald C. Pogue

## Opinion

[*1353] **Pogue, Senior Judge**: This action is again before the court following a fourth remand and redetermination.[1] The only issue remaining for review is the antidumping ("AD") duty rate assigned to one separate rate respondent — Changzhou Hawd Flooring Co., Ltd., ("Changzhou Hawd" or "Plaintiff").[2]

Previously, in the second and partial third redeterminations, the Department of Commerce ("Commerce") had, belatedly, sought to individually investigate Changzhou Hawd.[3]

---

[1] The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012) and 28 U.S.C. § 1581(c) (2012) further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition).

[2] This action was previously consolidated with Court Numbers 11-00452, 12-00007, [**2] and 12-00013, under Consolidated Court Number 12-00007. Order, May 31, 2012, Consol. Ct. No. 12-00007, ECF No. 37. Court Number 11-00452 was ultimately severed and dismissed. Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75; Judgment, Ct. No. 11-00452, ECF No. 68; see Baroque Timber Indus. (Zhongshan) Co. v. United States, ___ CIT ___, 853 F. Supp. 2d 1290 (2012); Baroque Timber Indus. (Zhongshan) Co. v. United States, ___ CIT ___, 865 F. Supp. 2d 1300 (2012). Following the first redetermination, Final Results of Redetermination Pursuant to Ct. Order, Consol. Ct. No. 12-00007, ECF No. 132 ("First Redetermination"), Court Numbers 12-00007 and 12-00013 were severed and final judgment entered. Order Granting Mot. to Sever, Consol. Ct. No. 12-00007, ECF No. 162; Judgment, Ct. No. 12-00007, ECF No. 163; Judgment, Ct. No. 12-00013, ECF No. 32. These were appealed by Defendant-Intervenor (the Coalition for American Hardwood Parity). Notice of Appeal, Ct. No. 12-00007, ECF No. 166; Notice of Appeal, Ct. No. 12-00013, ECF No. 33. Defendant-Intervenor moved to voluntarily dismiss the appeal, without opposition. The motion was granted. Zhejiang Layo Wood Indus. Co. v. United States, 576 F. App'x 1000 (Fed. Cir. 2014).

[3] Final Results of Redetermination Pursuant to Ct. Order, ECF No. 52 ("Second Redetermination"), at 8-9; Final Results of Redetermination Pursuant to Ct. Order, ECF No. 107 ("Third Redetermination"), at 16-17.

77 F. Supp. 3d 1351, *1354; 2015 Ct. Intl. Trade LEXIS 72, **3

However, this decision was challenged as[4] and found to be arbitrary [**3] and capricious. *Changzhou Hawd Flooring Co. v. United States, ___ CIT ___, 44 F. Supp. 3d 1376, 1388-90 (2015)*. On remand, Commerce determined that the separate rate, and therefore Changzhou Hawd's rate, was more than *de minimis*. Rather than then calculate a rate for Changzhou Hawd, however, Commerce decided to continue applying the company's current cash deposit rate, as established in the original final determination,[5] pending the final results of the Second Administrative Review, where Changzhou Hawd is again a separate rate respondent.[6] Final Results of Redetermination Pursuant to Ct. Order, ECF No. 130 ("Fourth Redetermination"). Plaintiff challenges this determination as not in accordance with law, not supported by substantial evidence, and not compliant with the court's previous [*1354] remand order.[7]

Because Commerce's decision is based on a reasonable reading of the law and of the evidentiary record, satisfying the court's previous remand instructions, the determination is affirmed.

Previous litigation of the separate rate in this investigation has produced two court opinions[8] and two corresponding redeterminations by Commerce,[9] a voluntary remand and redetermination,[10] a third court opinion,[11] and now a fourth redetermination by Commerce.[12] While the court presumes familiarity with the progression of this case, the immediately pertinent facts are summarized below.

In the second and [**5] supplementing partial third redeterminations, Commerce inferred that, because there were 110 non-cooperative respondents in the investigation, the separate rate was more than *de minimis*. Second Redetermination, ECF No. 52, at 3-7. Commerce, however, declined to calculate a specific separate rate. Id. at 7-8. Instead, the agency assigned seven of the Plaintiffs[13] the rate calculated for them in the First Administrative Review (which had already, by that time, been completed),[14] as limited by the provisional measures deposit cap.[15] Id. Changzhou Hawd, however, did not have a rate from the

## BACKGROUND

---

[4] See Comments of Certain Separate Rate Appellants to 2d Remand Redetermination, ECF No. 69 ("Pls.' Comments on Second Redetermination"), at 33-36.

[5] Multilayered Wood Flooring from the People's Republic of China [("PRC")], 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("Inv. [**4] Final Determination"); Multilayered Wood Flooring from the [PRC], 76 Fed. Reg. 76,690, 76,691-92 (Dep't Commerce Dec. 8, 2011) (amended final determination of sales at less than fair value and antidumping duty order) ("Inv. Amended Final Determination").

[6] See Multilayer Wood Flooring from the [*PRC*], *80 Fed. Reg. 1388 (Dep't Commerce Jan. 9, 2015)* (preliminary results of AD duty administrative review; 2012-2013) ("AR2 Prelim. Determination")

[7] Comments of Changzhou Hawd Flooring Co., Ltd. in Opp'n to 4th Remand Redetermination, ECF No. 132 ("Pl.'s Br.").

[8] Baroque Timber Indus. (Zhongshan) Co. v. United States, ___ CIT ___, 925 F. Supp. 2d 1332 (2013); Baroque Timber Indus. (Zhongshan) Co. v. United States, ___ CIT ___, 971 F. Supp. 2d 1333 (2014)

[9] First Redetermination, Consol. Ct. No. 12-00007, ECF No. 132; Second Redetermination, ECF No. 52.

[10] Third Redetermination, ECF No. 107.

[11] Changzhou Hawd, ___ CIT ___, 44 F. Supp. 3d 1376.

[12] Fourth Redetermination, ECF No. 130.

[13] Fine Furniture (Shanghai), Ltd. ("Fine Furniture"); Dunhua City Jisen Wood Industry Co., Ltd; Dunhua City Dexin Wood Industry Co., Ltd; Dalian Huilong Wooden Products Co.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Armstrong Wood Products (Kunshan) Co., Ltd. ("Armstrong"); and Karly Wood Product Ltd. Second Redetermination, ECF No. 52, at 1-2, 7-8.

[14] See Multilayered Wood Flooring from the [PRC], 79 Fed. Reg. 26,712, 26,713, (Dep't Commerce May 9, 2014) (final results of antidumping duty administrative review; 2011-2012) ("AR1 Final Determination").

[15] The provision measures deposit cap "ensures that, for the interstitial period of the investigation — after the preliminary determination but prior to the issuance of an AD order — importers are not liable for more than the rate set for them at the time of entry." Changzhou Hawd, 44 F. Supp. 3d at 1388 (citing 19 U.S.C. § 1673f(a); 19 C.F.R. § 351.212(d)(2014)). This means that "[i]f the AD duty rate set in the first administrative review (or subsequent litigation) is less, the difference between it and the cash deposit, bond, or other

77 F. Supp. 3d 1351, *1354; 2015 Ct. Intl. Trade LEXIS 72, **8

First Administrative Review.[16] Commerce, concluding that it did not have enough data on the record to calculate a rate reflective of Changzhou Hawd's economic reality, belatedly initiated an individual investigation of the company. Id. at 8-9; Third Redetermination, ECF No. 107.[17] While the court affirmed as reasonable **[1355]** Commerce's inference of a more than de minimis separate rate and use of rates from the First Administrative Review, *Changzhou Hawd, CIT at ___, 44 F. Supp. 3d at 1385-88*, it found Commerce's decision to individually investigate Changzhou Hawd at such a late date in the proceeding — and after repeatedly refusing to investigate a would-be voluntary respondent, claiming **[**6]** lack of administrative resources — to be arbitrary and capricious, and remanded accordingly. *Id. at 1388-91*.

On **[**8]** remand, Commerce again inferred that the separate rate was more than *de minimis*, but declined, as it did previously, to calculate a separate rate. Fourth Redetermination, ECF No. 130, at 4-5. Instead, because of "the limited time for which Changzhou Hawd's specific margin will be effective, and in the continued interest of conserving administrative resources,"[18] Commerce has proposed to continue applying the 3.30 percent cash deposit rate as calculated in the Inv. Amended Final Determination, 76 Fed. Reg. at 76,691-92,[19] until the Second Administrative Review, where Changzhou Hawd is again a separate rate respondent, sets Changzhou Hawd's assessed rate.[20] **[1356]** Fourth Redetermination, ECF No. 130, at 5-6. Commerce's deadline for the completion of the Second Administrative Review is July 8, 2015. Id. at 5.

## STANDARD OF REVIEW

security provided at entry, is refunded. If the AD duty rate is ultimately more, then the difference is not owed." Id. (citing Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1086 (Fed. Cir. 2001)).

[16]  Changzhou Hawd was found **[**7]** to have no shipments for the period of the first administrative review. AR1 Final Determination, 79 Fed. Reg. at 26,713.

[17]  Changzhou Hawd subsequently filed a petition for a writ of mandamus to compel Commerce to refrain from the individual investigation "until such time as this Court is satisfied that [Commerce] has complied with its legal obligation to calculate a lawful separate rate." Pl. Changzhou Hawd Flooring Co., Ltd. Pet. for Writ of Mandamus, ECF No. 71. Commerce agreed to suspend the deadlines for Changzhou Hawd's individual investigation, Letter from Commerce to Ct., ECF No. 82, and sought voluntary remand to reconsider its decision to conduct a full investigation of Changzhou Hawd, Def.'s Mot. for a Voluntary Remand, ECF No. 92. The court accordingly denied Plaintiff's petition as moot. Changzhou Hawd Flooring Co. v. United States, ___ CIT ___, 6 F. Supp. 3d 1358, 1360 n.9 (2014). Plaintiff now seeks to renew its petition for writ of mandamus. Pl.'s Br., ECF No. 132, at 15-16. However, as the court has already found Commerce's decision to conduct a full individual investigation of Changzhou Hawd arbitrary and capricious, and remanded to Commerce with instructions to find a prudent, reasonable method of establishing Changzhou Hawd's rate, Changzhou Hawd, ___ CIT at ___, 44 F. Supp. 3d at 1388-90, this motion remains moot and therefore is again DENIED AS MOOT.

[18]  In making this determination, Commerce emphasizes that its "discretion in carrying out antidumping and countervailing duty law should provide [Commerce] [with] the ability to conduct a full individual examination of a respondent if [Commerce] finds it necessary to do so," and only eschews this method because of the court's remand order. Fourth Redetermination, ECF No. 130, at 6. Commerce is correct that it has the discretion to reopen the record, Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012), however the **[**9]** exercise of that discretion cannot be arbitrary and capricious, see Changzhou Hawd, ___ CIT at ___, 44 F. Supp. 3d at 1388-90.

[19]  This was the separate rate, calculated by taking the simple average of the two non-de minimis mandatory respondent rates per 19 U.S.C. § 1673d(c)(5)(A). Inv. Final Determination, 76 Fed. Reg. at 64,322; Inv. Amended Final Determination, 76 Fed. Reg. at 76,691-92 (recalculating the separate rate, because of a change in a mandatory respondent rate, to equal 3.30 percent). On remand, however, changes to the underlying surrogate values and calculation methodology reduced the rates for all mandatory respondents to zero. First Redetermination, Consol. Ct. No. 12-00007, ECF No. 132, at 2, 52. The separate rate was subsequently estimated under 19 U.S.C. § 1673d(c)(5)(B). Id. at 27; Second Redetermination, ECF No. 52, at 6-8; Fourth Redetermination, ECF No. 130, at 4.

[20]  While Changzhou Hawd entered subject merchandise during the period of investigation (April 1, 2010 through September 30, 2010), Inv. Final Determination, 76 Fed. Reg. at 64,3l8, 64,323; see also 19 C.F.R. § 351.204(b)(1), it did not during the period of the First Administrative Review (May 26, 2011 publication of the preliminary determination in the investigation) through November 30, 2012 (the end of the month immediately preceding the first anniversary month of the order), AR1 Final Determination, 79 Fed. Reg. at 26,713; see also 19 C.F.R. § 351.213(e)(1)(ii); Multilayered Wood Flooring from the [PRC], 76 Fed. Reg. 30,656, 30,657 (Dep't Commerce May 26, 2011) (preliminary determination of sales at less than fair value) (dated **[**10]** May 26, 2011); Inv. Amended Final Determination, 76 Fed. Reg. at 76,690 (setting effective date of order at December 8, 2011). Changzhou Hawd again entered subject merchandise during the period of the second administrative review (December 1, 2012 through November 30, 2013). AR2 Prelim. Determination, 80 Fed. Reg. at 1388, 1389.

77 F. Supp. 3d 1351, *1356; 2015 Ct. Intl. Trade LEXIS 72, **8

The court will sustain Commerce's determination on remand if it is accordance with law, supported by substantial evidence on the record, and complies with the court's remand order. *19 U.S.C. § 1516a(b)(1)(B)(i)*; *Jinan Yipin Corp., Ltd. v. United States, 33 CIT 934, 936, 637 F. Supp. 2d 1183, 1185 (2009)*

## DISCUSSION

### I. Commerce's Methodology

Lacking more specific statutory guidance, Commerce follows *19 U.S.C. § 1673d(c)(5)* (the "[m]ethod for determining [the] estimated all-others [**11] rate") to establish the separate rate. See Fourth Redetermination, ECF No. 130, at 4. Generally, the separate rate is equal to the weighted average of the rates calculated for individually investigated respondents, "excluding any zero and *de minimis* margins, and any margins [based entirely on facts otherwise available]." *19 U.S.C. § 1673d(c)(5)(A)*. However, where, as here, all individually investigated rates are zero, *de minimis*, or based entirely on facts otherwise available, the statute allows Commerce to use "any reasonable method to establish the estimated [separate rate]." *19 U.S.C. § 1673d(c)(5)(B)*.

"[A]ny reasonable method" is a "lenient standard" that leaves much to Commerce's discretion. *Yangzhou Bestpak*

*Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013).*[21] It is expected to mean a weighted average of the rates calculated for individually investigated respondents. *19 U.S.C. § 1673d(c)(5)(B)*; Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), HR. Doc. No. 103-316 (1994) at 873, reprinted in 1994 U.S.C.C.A.N. 4040, 4201.[22] However, if [**1357] this method "is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers," i.e., is not reasonable in context, then "Commerce may use other reasonable methods." SAA at 873, reprinted [**12] in 1994 U.S.C.C.A.N. at 4201.

Here, Commerce has determined that the expected method results in a separate rate that is not reasonably reflective of respondents' potential dumping margins. Fourth Redetermination, ECF No. 130, at 4-5; Second Redetermination, ECF No. 52, at 4-5.[23] Instead, citing to the Second Redetermination (and the court's affirmance thereof), Commerce has inferred that the separate rate (and therefore Changzhou Hawd's rate) is more than *de minimis*. Fourth Redetermination, ECF No. 130, at 4-5; see Second Redetermination, ECF No. 52, at 3-6. Rather than calculate [**13] a specific separate rate, however, Commerce decided to continue applying Changzhou Hawd's current 3.30 percent cash deposit rate, as calculated in the *Inv.*

---

The "preliminary determination in an [AD] duty investigation constitutes the first point at which [Commerce may require duties]," *19 C.F.R. § 351.205(a)*, here from the period of the First Administrative Review, AR1 Final Determination, 79 Fed. Reg. at 26,713. Accordingly, all entries made by Changzhou Hawd that are actually subject to the AD duty order (and therefore a cash deposit requirement) come from the Second Administrative Review period and are therefore "covered by" the Second Administrative Review. See *19 U.S.C. § 1675(a)(2)(C)*. The Second Administrative Review will "be the basis for the assessment of [AD] duties" on these entries, and "for deposits of estimated duties" going forward. Id.; see *AR2 Prelim. Determination, 80 Fed. Reg. at 1389*.

[21]    Presented with such broad language, the court considers only whether "the agency's interpretation amounts to a reasonable construction of the statute." *Bestpak, 716 F.3d at 1377* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984))*. Further, "[t]o survive judicial scrutiny, [Commerce's] construction need not be the only reasonable interpretation or even the most reasonable interpretation. Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." *Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994)* (citing *Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978))* (emphasis original).

[22]    The SAA is recognized by Congress as an authoritative expression concerning the interpretation and application of the Tariff Act of 1930. *19 U.S.C. § 3512(d)*.

[23]    Plaintiff argues that Commerce "has no basis at all in this case to set aside the 'expected method' of calculating rates for cooperating non-mandatory respondents," Pl.'s Br., ECF No. 132, at 6, and asks that the court "direct [Commerce] to use the 'expected method' and assign Changzhou Hawd a *de minimis* antidumping duty margin, excluding Changzhou Hawd from the [**14] antidumping duty order on appeal in this case." Id., at 3.

This argument fails in the same way and for the same reasons it failed in *Changzhou Hawd,    CIT at    , 44 F. Supp. 3d. at 1383-85*. Cf. Pls.' Comments on Second Redetermination, ECF No. 69, at 10-13 (making the same argument). The statute provides an "expected method," not a compulsory method. "That 'any reasonable method' is available to Commerce, not just the expected method, indicates the statute contemplates the possibility of a more than *de minimis* separate rate even where, as here, all individually investigated rates are zero." Changzhou Hawd, __CIT at __, 44 F. Supp. at 1384 (citing *19 U.S.C. § 1673d(c)(5)(B))*.

77 F. Supp. 3d 1351, *1357; 2015 Ct. Intl. Trade LEXIS 72, **13

*Amended Final Determination, 76 Fed. Reg. at 76,691-92*, in the brief interim until the Second Administrative Review sets the assessed rate for Changzhou Hawd's entries (i.e., until July 8, 2015). Fourth Redetermination, ECF No. 130, at 5-6. Accordingly, having inferred from the record that the separate rate is more than *de minimis* and applied a (more than *de minimis*) rate calculated for Changzhou Hawd, Commerce may be said to have established a rate "reasonably reflective" of Changzhou Hawd's "potential dumping margin[]." See SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201. Accordingly, Commerce's methodology is within a reasonable construction of the statute. Cf. Changzhou Hawd, __CIT at __, 44 F. Supp. at 1383-85 (holding the same for the other separate rate plaintiffs in this action).[24]

[*1358] II. Commerce's Methodology in the Context of the Record

*A. Commerce's Inference that the Separate Rate is More Than De Minimis*

As in the Second Redetermination, Commerce has inferred that the separate rate is more than *de minimis* because 110 companies did not respond to Commerce's quantity and value questionnaire. Fourth Redetermination, ECF No. 130, at 4; see Second Redetermination, ECF No. 52, at 4. Commerce again corroborates its inference with the non-*de minimis* rates calculated for separate rate respondents in subsequent administrative reviews. Fourth Redetermination, ECF No. 130, at 6-7; Second Redetermination, ECF No. 52, at 7, 30.[25]

Commerce's inference of a [**17] more than *de minimis* separate rate was reasonable in the Second Redetermination, and remains reasonable here.[26] Commerce has made the same rational connection between the facts found (110 non-cooperating respondents) and the choices made (the inference of a more than *de minimis* separate rate for the investigation).[27] See *Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1385-87* (holding that the same inference on the same record as that here was supported by substantial

---

[24]  Contrary to Plaintiff's argument, Pl.'s Br., ECF No. 132, at 2-3, this result is not barred by *Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1388-90*. While a redetermination must comply with the remand order, Jinan Yipin, 33 CIT at 936, 637 F. Supp. 2d at 1185, the remand order here was "for further consideration" - that is, to find a "reasonable method" to establish Changzhou Hawd's rate, rooted in the already robust evidentiary record, supplemented as necessary given Commerce's continued "discretion to reasonably reopen the record." *Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1390-91*. This is in keeping with this Courts role in reviewing Commerce's decisions. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing [**15] court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.").

[25]  In the First Administrative Review, Commerce found dumping margins of 0.00, 5.74, and 0.00 for Nanjing Minglin Wooden Industry Co. Ltd., Fine Furniture, and Armstrong (all [**16] separate rate respondents in the investigation, see Inv. Final Determination, 76 Fed. Reg. at 64,323), respectively. AR1 Final Determination, 79 Fed. Reg. at 26,714. Fine Furniture's rate became the separate rate (as the only individually investigated non-*de minimis*, non-AFA rate). Id. The final results were subsequently amended, to correct a ministerial error, changing Fine Furniture's rate to 5.92 percent (with the separate rate revised accordingly). Multilayered Wood Flooring from the [PRC], 79 Fed. Reg. 35,314, 35,315-16 (Dep't Commerce June 20, 2014) (amended final results of antidumping duty administrative review; 2011-2012).

In the Second Administrative Review, Commerce has preliminarily found dumping margins of 0.00 and 18.27 for individually investigated respondents Dalian Dajen Wood Co., Ltd. and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao,") (both separate rate respondents in the investigation, see Final Investigation, 76 Fed. Reg. at 64,323, and First Administrative Review, see AR1 Final Determination, 79 Fed. Reg. at 26,714). **AR2 Prelim. Determination, 80 Fed. Reg. at 1389**. Senmao's rate became the separate rate (as the only individually investigated non-*de minimis*, non-AFA rate). Id. Changzhou Hawd, as a separate rate respondent in the Second Administrative Review, is subject to this separate rate. Id. The final determination will be issued no later than July 8, 2015. Fourth Redetermination, ECF No. 130, at 5.

[26]  See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (explaining that the substantial evidence standard asks whether, given the record as a whole, the agency's determination was reasonable).

[27]  See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962) (holding that the agency must articulate "rational connection between the facts found and the choice made").

77 F. Supp. 3d 1351, *1358; 2015 Ct. Intl. Trade LEXIS 72, **17

evidence).[28] This redetermination is only distinct in that now Commerce also has the **[*1359]** preliminary results from the Second Administrative Review to corroborate its conclusion that "the separate rate respondents' economic reality is more varied and complicated than the mandatory respondent *de minimis* rates [in the investigation] suggest" and to "confirm[] that the separate rate respondents merit the closer consideration that keeping them subject to the order affords, some receiving de minimis rates and others not." *Changzhou Hawd,    CIT at    , 44 F. Supp. 3d at 1387*.[29]

Changzhou Hawd, in successfully challenging Commerce's attempt to individually investigate it (and thereby obtain an individual rate), retained its separate rate status, *Changzhou Hawd,    CIT at    , 44 F. Supp. 3d at 1388-90*, and as such, it is subject to a reasonably determined separate rate. As before, "Commerce's conclusion that — based on the silence of 110 respondents, the resultant gap in the record, **[**20]** and the mixed results of the first [and now second] administrative review[s] — the separate rate (and thus Plaintiff['s] rate) in this investigation is somewhat more than *de minimis* and less than AFA, while not the only possible inference, is a reasonable inference from the record." *Id. at 1387*. Commerce's inference of a more than de minimis separate rate remains supported by substantial evidence.

*B. Changzhou Hawd's Interim Cash Deposit Rate*

Commerce, having reasonably inferred that the separate rate is more than *de minimis*, again declines to calculate a specific separate rate. Instead, Commerce will continue to apply the 3.30 percent cash deposit rate from the *Investigation Amended Final Determination, 76 Fed. Reg. at 76,691-92*, until the Second Administrative Review is completed and sets Changzhou Hawd's actual assessed rate. Fourth Redetermination, ECF No. 130, at 5-6.

As Plaintiff points out, Pl.'s Br., ECF No. 132, at 13, and Commerce concedes, Fourth Redetermination, ECF No. 130, at 6, the 3.30 percent separate rate comes from the Investigation Amended Final Determination and was remanded because the individually-investigated rates from which it was calculated were held to be unsupported by substantial evidence. See *Baroque Timber,    CIT    , 925 F. Supp. 2d 1332*. However, while this 3.30 percent rate lacks **[**21]** the under-pinnings to be a precise calculation, the particular circumstances presented here render it a reasonable estimate, a cash deposit rate, of Changzhou Hawd's duty liability and therefore supported by substantial evidence.

**[*1360]** First, any specific rate used here is without more than temporary effect. Regardless of the precise rate calculated, Changzhou Hawd remains subject to the AD duty order because its rate, the separate rate, is reasonably more than *de minimis*. See *19 U.S.C. §§ 1673b(b)(3), 1673d(a)(4)*. Changzhou Hawd's actual liability will be determined in the Second Administrative Review, where the assessed rate for Changzhou Hawd's entries will be set. See *19 U.S.C. § 1675(a)(2)(C)*. The rate set here is only a cash deposit rate, an estimate of potential duties. *19 U.S.C. §*

---

28   Nonetheless, Plaintiff **[**18]** again argues that this inference is unsupported by substantial evidence because Commerce relied on the non-cooperation of 110 respondents, which is tantamount to applying adverse facts available to cooperative respondents, and impermissibly considered the presence of non-*de minimis* calculated rates for separate rate respondents, including Changzhou Hawd, in the First and Second Administrative Reviews. Pl.'s Br., ECF No. 132, at 4-11.

These arguments remain as unpersuasive as before, when Plaintiffs used them to challenge the same inference in the Second Redetermination. See Second Redetermination, ECF No. 52, at 4 (Commerce making the same inference); Pls.' Comments on Second Redetermination, ECF No. 69, at 15-19 (Plaintiffs making the same argument against it); Changzhou Hawd,    CIT at    , 44 F. Supp. 3d at 1385-87 (holding that Commerce's inference of a greater than *de minimis* separate rate is supported by substantial evidence, is not the equivalent of applying AFA to separate rate respondents, and does not impermissibly consider rates from subsequent stages, rather using them permissibly, for corroboration).

29   Plaintiff argues this does not follow because "the [c]ourt's [previous] holdings were moored in the facts of [the First Administrative **[**19]** Review]" and "[t]hose results cannot have anything to do with Changzhou Hawd's economic reality because the company had no sales in that period." Pl.'s Br., ECF No. 132, at 12. This misapprehends the nature of Changzhou Hawd's status as a separate rate respondent. It is true that the separate rate must reflect "commercial reality" and "bear some relationship to [respondents'] actual dumping margins." Bestpak, 716 F. 3d at 1380 (quotation marks and citation omitted). However, the separate rate remains an estimate calculated for a group of respondents. See 19 U.S.C. §§ 1673d(c)(5), 1677f-1(c). Subsequently calculated rates from multiple separate rate respondents "bear some relationship to [respondents'] actual dumping margins" and tethers the separate rate to economic reality. See Bestpak, 716 F. 3d at 1380. Changzhou Hawd, having eschewed individual investigation, is a separate rate respondent and subject to the separate rate.

*1673b(d)(1)(B)*.[30] Because the Second Administrative Review must be completed no later than July 8, 2015, this rate will only apply for a matter of weeks, for a shorter period of time than it would take to remand and redetermine the rate. Fourth Redetermination, ECF No. 130, at 5. Thus, any rate calculated now is teetering on the brink of mootness.

Second, a rate of 3.30 percent is a conservative estimate that aligns with the margins calculated for separate rate respondents (including Changzhou Hawd) in subsequent reviews. While each period of investigation or review is a "separate segment of proceedings with its own unique facts," *Peer Bearing Co.-Changshan v. United States, 32 CIT 1307, 1310, 587 F.Supp.2d 1319, 1325 (2008)* (quotation marks and citation omitted), "if dumping occurred during the review, under the discipline of an AD order, it is likely to have also occurred [in the investigation], without the discipline of an AD order to disincentivize such pricing behavior," *Changzhou Hawd,    CIT at    , 44 F. Supp. 3d at 1386*.[31] In the First Administrative Review, the separate rate is 5.92 percent. Investigation Amended Final Determination, 79 Fed. Reg. at 35,315. In the Second Administrative Review, the separate rate (Changzhou Hawd's rate as a separate rate respondent) is preliminarily 18.92 percent. *AR2 Prelim. Determination, 80 Fed. Reg. at 1389*. This suggests that the 3.30 percent rate is a fair, if not conservative

estimate (being less than any calculated rate) of Changzhou Hawd's potential AD duty liability, and therefore is reasonably reflective of the company's economic reality.[32]

Accordingly, because Commerce's estimated rate is both temporary and conservative, [*1361] in the interest of administrative and judicial economy,[33] it is reasonable for Commerce to continue using it as the cash deposit rate [**24] for Changzhou Hawd.

**CONCLUSION**

For the foregoing reasons, and consistent with the court's opinion in *Changzhou Hawd,    CIT    , 44 F. Supp. 3d 1376*, Commerce's determination in the *Inv. Amended Final Determination, 76 Fed. Reg. 76,690* as amended by the Fourth Redetermination, ECF No. 130, is AFFIRMED.

Judgment will be entered accordingly.

/s/ Donald C. Pogue

Donald C. Pogue, Senior Judge

Dated: July 6, 2015

New York, NY

---

[30] Any difference between the assessed rate and cash deposit rate will result either in a refund if duties have been over-collected, or additional payments [**22] if duties have been under-collected. *19 U.S.C. § 1673f(b)*.

[31] This inference is in keeping with Commerce's permissible rational actor assumption — i.e., that respondents will make choices that will result in the lowest [**23] possible rate. See Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1338-39 (Fed. Cir. 2002) (citing Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990)); Tianjin Mach. Imp. & Exp. Corp. v. United States,    CIT    , 752 F. Supp. 2d 1336, 1347 (2011) ("In other words, [Rhone Poulenc] stands for the proposition that a respondent can be assumed to make a rational decision to either respond or not respond to Commerce's questionnaires, based on which choice will result in the lower rate.").

[32] Cf. Navneet Publications (India) Ltd. v. United States, Slip-Op. No. 15-41, 2015 Ct. Intl. Trade LEXIS 43, 2015 WL 1963768, at *4 (CIT May 4, 2015) ("On remand, Commerce was tasked only with ensuring that the all-others rate reflected plaintiffs' reality. That the [selected, not calculated] 0.5% all-others rate aligns with allothers rates from past reviews suggests that Commerce fulfilled this task.") (citations omitted). Commerce further argues that "Changzhou Hawd's ability and willingness to sell subject merchandise in the U.S. market at a cash deposit rate of 3.30 percent reflects Changzhou Hawd's economic reality to the extent necessary under the specific facts of this redetermination" — that is, it is a temporary rate with a temporary effect, that has not yet pushed Changzhou Hawd out of the market. Fourth Redetermination, ECF No. 130, at 7.

[33] See USCIT Rule 1; Union Camp Corp. v. United States, 23 CIT 264, 280, 53 F. Supp. 2d 1310, 1325 (1999).



Ⓐ  Neutral
As of: October 29, 2015 2:46 PM EDT

# *Changzhou Hawd Flooring Co., Ltd. v. United States*

United States Court of International Trade

January 23, 2015, Decided

Court No. 12-00020

**Reporter**

44 F. Supp. 3d 1376; 2015 Ct. Intl. Trade LEXIS 6; 37 Int'l Trade Rep. (BNA) 1339; SLIP OP. 15-07

CHANGZHOU HAWD FLOORING CO., LTD., et al., Plaintiffs, v. UNITED STATES, Defendant.

**Prior History:** *Baroque Timber Indus. (Zhongshan) Co. v. United States, 853 F. Supp. 2d 1290, 2012 Ct. Intl. Trade LEXIS 92 (2012)*

**Disposition:** remand redetermination affirmed in part and remanded in part.

**Counsel:** [**1] Gregory S. Menegaz and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, DC, for the Plaintiffs.

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Sarah M. Wyss, and Daniel R. Wilson, Mowry & Grimson, PLLC, of Washington, DC, for Plaintiff-Intervenor Fine Furniture (Shanghai) Ltd.

H. Deen Kaplan, Craig A. Lewis, and Mark S. McConnell, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Armstrong Wood Products (Kunshan) Co., Ltd.

Mark Ludwikowski, Kristen Smith, and Lana Nigro, Sandler, Travis & Rosenberg, PA, of Washington, DC for Plaintiff-Intervenors Lumber Liquidators Services, LLC, and Home Legend, LLC.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With him on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel was Shana Hofstetter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda, MD, for the Defendant-Intervenor Coalition for American Hardwood [**2] Parity.

**Judges:** Before: Donald C. Pogue, Senior Judge.

**Opinion by:** Donald C. Pogue

# Opinion

[*1379]   OPINION and ORDER

**Pogue, Senior Judge**: This action is again before the court following a second redetermination and a voluntary partial third redetermination. In the third redetermination, the Department of Commerce ("Commerce") reaffirmed the second redetermination of the final results of the antidumping ("AD") duty investigation of multilayered wood flooring from the People's Republic of China ("PRC" or "China").[1]

[*1380]  Still at issue are the AD duty rates assigned to eight separate rate respondents — the Plaintiffs and

---

[1]  Multilayered Wood Flooring from the [PRC], 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("Final Determination") and accompanying Issues & Decision Memorandum, A-570-970, POI Apr. 1, 2010 — Sept. 30, 2010 (Oct. 11, 2011) ("Final Determination I & D Mem."). Commerce initiated this investigation in response to a petition by Defendant-Intervenor (the Coalition for American Hardwood Parity ("CAHP")), alleging dumping of multilayered wood flooring from the PRC on the U.S. market. Multilayered Wood Flooring from the [*PRC*], 75 Fed. Reg. 70,714 *(Dep't Commerce Nov. 18, 2010)* (initiation of antidumping duty investigation).

44 F. Supp. 3d 1376, *1380; 2015 Ct. Intl. Trade LEXIS 6, **3

Plaintiff-Intervenors here (collectively, "Plaintiffs") [**3] [2] — for the underlying AD duty investigation. Specifically, Plaintiffs challenge Commerce's decision to assign seven of them an unspecified, non-*de minimis* AD duty rate for the investigation, to provide for liquidation of their entries at the rates established for them in the first administrative review[3] (as limited by the provisional measures deposit cap), and to initiate a full investigation of the remaining eighth Plaintiff, Changzhou Hawd Flooring Co. ("Changzhou Hawd"), as it has certified no shipment of subject merchandise in the first administrative review and therefore otherwise lacks any relevant calculated rate. The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, *19 U.S.C. § 1516a(a)(2)(B)(i)* and *28 U.S.C. § 1581(c) (2012)*.[4]

As explained below, Commerce's determination regarding the group of seven Plaintiffs is based on a reasonable reading of the law and record evidence. However, the agency's decision to conduct, at this late date, a full investigation of Changzhou Hawd is arbitrary and capricious. Therefore, the court remands again for further consideration in accordance with this opinion.

## BACKGROUND

Litigation of the separate rate[5] has so far produced two court opinions,[6] two corresponding redeterminations by Commerce,[7] **[*1381]** and, most recently, a voluntary remand and redetermination by Commerce.[8]

In each successive determination, Commerce has established the separate rate in a different way. In the <u>Final Determination</u>, having individually investigated three fully cooperative mandatory respondents,[9] Commerce loosely followed *19 U.S.C. § 1673d(c)(5)(A)* and took a simple

---

[2]  Plaintiffs are cooperative, non-individually investigated respondents in the underlying administrative investigation. They have all established their entitlement to a separate rate from the PRC-wide entity. <u>See Final Determination</u>, 76 Fed. Reg. at 64,321-22.

[3]  <u>See Multilayered Wood Flooring from the [**PRC**], 78 Fed. Reg. 70,267 (Dep't Commerce Nov. 25, 2013)</u> (preliminary results of antidumping duty administrative review; 2011-2012) ("<u>Preliminary Review</u>"); <u>Multilayered Wood Flooring from the [PRC], 79 Fed. Reg. 26,712 (Dep't Commerce May 9, 2014)</u> (final results of antidumping duty administrative review; 2011-2012) ("<u>Final Review</u>"); **[**4]** <u>Multilayered Wood Flooring from the [PRC], 79 Fed. Reg. 35,314 (Dep't Commerce June 20, 2014)</u> (amended final results of antidumping duty administrative review; 2011-2012) ("<u>Amended Final Review</u>"). The first administrative review is currently at issue before this Court. <u>See Fine Furniture (Shanghai) Ltd. v. United States</u>, Consol. Ct. No. 14-00135.

[4]  All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition.

[5]  Plaintiffs' action was previously consolidated with Court Numbers 11-00452, 12-00007, and 12-00013, under Consolidated Court Number 12-00007. Order, May 31, 2012, Consol. Ct. No. 12-00007, ECF No. 37. Court Number 11-00452 was ultimately severed and dismissed. **[**5]** Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75; Judgment, Ct. No. 11-00452, ECF No. 68; <u>see Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ CIT ___, 853 F. Supp. 2d 1290 (2012)</u>; <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ CIT ___, 865 F. Supp. 2d 1300 (2012)</u>.

[6]  <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ CIT ___, 925 F. Supp. 2d 1332 (2013)</u>; <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ CIT ___, 971 F. Supp. 2d 1333 (2014)</u>.

[7]  Final Results of Redetermination Pursuant to Ct. Order, Consol. Ct. No. 12-00007, ECF No. 132 ("<u>First Redetermination</u>"), and Final Results of Redetermination Pursuant to Ct. Order, ECF No. 52 ("<u>Second Redetermination</u>"). Following the first remand determination, Court Numbers 12-00007 and 12-00013 were severed and final judgment entered. Order Granting Mot. to Sever, Consol. Ct. No. 12-00007, ECF No. 162; Judgment, Ct. No. 12-00007, ECF No. 163; Judgment, Ct. No. 12-00013, ECF No. 32. These were appealed by Defendant-Intervenor CAHP. Notice of Appeal, Ct. No. 12-00007, ECF No. 166; Notice of Appeal, Ct. No. 12-00013, ECF No. 33. Defendant-Intervenor moved to voluntarily dismiss the appeal, without opposition. The motion was granted. <u>Zhejiang Layo Wood Indus. Co. v. United States, 576 F. App'x 1000 (Fed. Cir. 2014)</u>.

[8]  Final Results of Redetermination Pursuant to Ct. Order, ECF No. 107 ("<u>Third Redetermination</u>").

[9]  Commerce requested quantity and value ("Q&V") data from 190 companies and received timely responses from 80. <u>Multilayered Wood Flooring from the [PRC], 76 Fed. Reg. 30,656, 30,657 (Dep't Commerce May 26, 2011)</u> (preliminary determination of sales at less than fair value) ("<u>Preliminary Determination</u>"). From these, Commerce selected the three largest exporters (by volume) to be mandatory respondents. <u>Id. at 30,658</u>; <u>see 19 U.S.C. § 1677f-1(c)(2)(B)</u>. The remaining exporters and producers were invited to submit a separate-rate status application. Commerce received timely-filed responses from 74 companies, all of which demonstrated eligibility for separate rate status (including the Plaintiffs here). <u>Final Determination</u>, 76 Fed. Reg. at 64,321. The 110 companies that did not

[**6]  average[10] of the two non-*de minimis* mandatory respondent rates (resulting in a separate rate of 3.31 percent). <u>Final Determination</u>, 76 Fed. Reg. at 64,321-22. Plaintiffs challenged the determination. Compl., ECF No. 9 at ¶ 3. It was ultimately remanded on other grounds. <u>*Baroque Timber, ___ CIT ___, 925 F. Supp. 2d 1332*</u>.

In the <u>First Redetermination</u>, changes to the underlying surrogate values and calculation [**7] methodology resulted in all three mandatory respondents receiving AD duty rates of zero. <u>First Redetermination</u>, Consol. Ct. No. 12-00007, ECF No. 132, at 2, 52. Because of this, Commerce recalculated the separate rate under <u>*19 U.S.C. § 1673d(c)(5)(B)*</u>, and decided that "any reasonable method" included a simple average of the three zero mandatory rates and a rate based on adverse facts available ("AFA").[11] This resulted in a higher separate rate of 6.41 percent. <u>First Redetermination</u>, Consol. Ct. No. [*1382] 12-00007, ECF No. 132, at 27. The court found that this method, while not per se unreasonable, was unsupported by substantial evidence, because Commerce had failed to articulate a rational connection between Plaintiffs' economic reality and the use of the AFA rate in the calculation of their rate. <u>*Baroque Timber, ___ CIT ___, 971 F. Supp. 2d at 1344-45*</u>. The court accordingly remanded to Commerce for a redetermination of the separate rate. <u>*Id. at 1346*</u>.

Between the second remand and the corresponding redetermination, Commerce issued the final determination in the first administrative review following the investigation at issue here. <u>*Final Review, 79 Fed. Reg. 26,712*</u>. Because of this, in the <u>Second Redetermination</u>, rather than recalculate the separate rate for all separate rate respondents, Commerce inferred that, because there were 110 non-cooperative respondents in the investigation, <u>see</u> Part IIA, *infra*, the appropriate separate rate for the investigation was more than *de minimis*. It then assigned seven of the Plaintiffs[12] the rate calculated for them in the first administrative review (as limited by the provisional measures deposit cap). <u>Second Redetermination</u>, ECF No. 52, at 6-8. The remaining eighth Plaintiff, Changzhou Hawd, having certified no shipments, did not have a calculated rate for the first review. Commerce concluded that it did not have enough data on the record to calculate [**9] a rate reflective of that company's economic reality and initiated an individual investigation of this eighth respondent. <u>Id.</u> at 8-9.[13]

The <u>Second Redetermination</u> was challenged in extensive briefing before the court,[14] and, at the court's suggestion, <u>see</u> Telephone Conf., ECF No. 79, Commerce requested a partial voluntary remand "to determine whether it should conduct a limited investigation of the eight separate rate [P]laintiffs," rather than a full investigation [*1383] of just [**10] Changzhou Hawd. Mot. for Voluntary Remand, ECF

---

respond to Commerce's Q&V questionnaire were treated as part of the PRC-wide entity. <u>Preliminary Determination</u>, 76 Fed. Reg. at 30,661-62 (unchanged in <u>Final Determination</u>, 76 Fed. Reg. at 64,322).

[10]   Commerce declined to use the weighted average indicated in <u>19 U.S.C. § 1673d(c)(5)(A)</u> because doing so would have risked disclosure of mandatory respondents' proprietary information. <u>Final Determination</u>, 76 Fed. Reg. at 64,322.

[11]   If Commerce finds that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then, in calculating that party's AD duty rate, Commerce may "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." [**8]  <u>19 U.S.C. § 1677e(b)</u>. When Commerce "relies on secondary information [as facts otherwise available] rather than on information obtained in the course of an investigation or review," it must "to the extent practicable, corroborate that information from [reasonably available] independent sources." <u>Id.</u> at <u>1677e(c)</u>.

[12]   Fine Furniture (Shanghai), Ltd. ("Fine Furniture"); Dunhua City Jisen Wood Industry Co., Ltd; Dunhua City Dexin Wood Industry Co., Ltd; Dalian Huilong Wooden Products Co.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Armstrong Wood Products (Kunshan) Co., Ltd. ("Armstrong"); and Karly Wood Product Ltd. <u>Second Redetermination</u>, ECF No. 52, at 1-2, 7-8.

[13]   Changzhou Hawd subsequently filed a petition for a writ of mandamus to compel Commerce to refrain from the individual investigation. Pl. Changzhou Hawd Flooring Co., Ltd. Pet. for Writ of Mandamus, ECF No. 71. Commerce agreed to suspend the deadlines for Changzhou Hawd's individual investigation, Letter from Commerce to Ct., ECF No. 82, and the court accordingly denied the petition as moot. <u>Changzhou Hawd Flooring Co. v. United States, ___ CIT ___, 6 F. Supp. 3d 1358, 1360 n.9 (2014)</u>.

[14]   <u>See</u> Comments of Certain Separate Rate Appellants to Second Remand Redetermination, ECF No. 69 ("<u>Pls. Comments</u>"); Comments of Def.-Intervenor Re Dep't of Commerce Final Results of Redetermination Pursuant to Remand, ECF No. 73; Comments of Fine Furniture (Shanghai) Ltd. on Dep't of Commerce May 30, 2014 Final Results of Redetermination Pursuant to Ct. Order, ECF No. 74 ("<u>Fine Furniture Comments</u>"); Comments in Opp'n to Dep't of Commerce May 29, 2014 Final Results of Redetermination Pursuant to Ct. Remand, ECF No. 75 ("<u>Armstrong Comments</u>"); Resp. of Lumber Liquidators Services, LLC in Opp'n to U.S. 2d Remand Redetermination, ECF No. 76 ("<u>Lumber Liquidators Comments</u>"); Reply to Comments of Def.-Intervenor Re Dep't of Commerce Final Results of Redetermination Pursuant to Remand, ECF No. 89; Reply Comments [**11]  of Lumber Liquidators Services, LLC in Opp'n to the U.S. 2d Remand Redetermination, ECF No. 90; Reply Comments of Fine Furniture (Shanghai) Ltd. on Dep't of Commerce May

Case: 15-1899    Document: 40    Page: 60    Filed: 11/04/2015

Page 4 of 9

44 F. Supp. 3d 1376, *1383; 2015 Ct. Intl. Trade LEXIS 6, **10

No. 92 at 1 (quotation marks omitted). The court granted the voluntary remand. *Changzhou Hawd, CIT at , 6 F. Supp. 3d at 1362*. It was ultimately a futile exercise. Commerce essentially decided that it was impossible to take an approach that was both measured and fact-based, and reaffirmed its results and reasoning in the Second Redetermination. See Third Redetermination, ECF No. 107, at 17.

## STANDARD OF REVIEW

The court will sustain Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *19 U.S.C. § 1516a(b)(1)(B)(i)*. The court will set aside agency actions found to be arbitrary and capricious. *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1377 (Fed. Cir. 2012)* (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974)*).

## DISCUSSION

### I. Commerce's Methodology

Commerce generally follows *19 U.S.C § 1673d(c)(5)* to establish the separate rate. Second Redetermination, ECF No. 52, at 3; *Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1374 (2013)*. Thereunder, the general rule sets the separate rate as equal "to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins [based entirely on facts otherwise available]." *19 U.S.C. § 1673d(c)(5)(A)*. The exception to this rule, which applies only when all individually investigated rates are zero, *de minimis*, or based **[**12]** entirely on facts otherwise available, allows Commerce to use "any reasonable method to establish the estimated

[separate rate] for exporters and producers not individually investigated." *Id.* at *§ 1673d(c)(5)(B)*. "Any reasonable method" is expected to mean the average of the rates calculated for individually investigated respondents. *19 U.S.C. § 1673d(c)(5)(B)*; Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), HR. Doc. No. 103-316 (1994) at 873, reprinted in 1994 U.S.C.C.A.N. 4040, 4201.[15] However, "if [the expected] method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201.

Here, all three individually investigated respondents had AD duty rates of zero. Second Redetermination, ECF No. 52, at 3. Commerce accordingly selected the separate rate under the exception — using "any reasonable method" — rather than the rule. *Id.*; *19 U.S.C. § 1673d(c)(5)(B)*. Commerce elected not to use the expected method, **[**13]** or even to calculate a specific separate rate for the investigation. Rather, the agency went no further than inferring that the separate rate, on the record evidence, must be more than *de minimis*. Second Redetermination, ECF No. 52, at 4-7. Plaintiffs argue that this is not in accordance with law, contending Commerce must calculate a *de minimis* separate rate for the investigation.[16]

[*1384] The AD statute does not speak directly to the question at issue;[17] it only requires "any reasonable method to establish" the separate rate. See *19 U.S.C. § 1673d(c)(5)(B)*. "Any reasonable method" is a "lenient standard," *Bestpak, 716 F.3d at 1378*, and "establish" is a broader term than "calculate." The court must "leave the discretion provided by the ambiguities of [the AD] statute with the implementing agency," *Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir. 2014)* (quoting *United States v. Eurodif S.A., 555 U.S. 305, 316,*

---

30, 2014 Final Results of Redetermination Pursuant to Ct. Order, ECF No. 91; Reply Comments of Def.-Intervenor Re Dep't of Commerce Final Results of Redetermination Pursuant to Remand, ECF No. 93.

[15] The SAA is recognized by Congress as an authoritative expression concerning the interpretation and application of the Tariff Act of 1930. *19 U.S.C. § 3512(d)*.

[16] Pls. Comments, ECF No. 69, at 4-7, 10-13; Armstrong Comments, ECF No. 75, at 4-8; Lumber Liquidators Comments, ECF No. 76, at 3.

[17] Commerce's methodology must be in accordance with law. See *19 U.S.C. § 1516a(b)(1)(B)(i)*. If the statue speaks clearly "to the precise question at issue," then it defines agency action; "[i]f the statute does not clearly answer the relevant question, then the court must . . . decide whether the agency's interpretation amounts to a reasonable construction of the statute." *Bestpak, 716 F.3d at 1377* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*). Commerce's interpretation "need not be the only reasonable interpretation" nor the "most reasonable." *Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994)* (original emphasis omitted) (citing *Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978)*).

44 F. Supp. 3d 1376, *1384; 2015 Ct. Intl. Trade LEXIS 6, **13

*129 S. Ct. 878, 172 L. Ed. 2d 679 (2009)*), even where "the court might have preferred" a different interpretation, *Koyo Seiko, 36 F.3d at 1570* (citation omitted). The broad language of the statute allows Commerce to tailor its method to the record sevidence before it. See *Eurodif, 555 U.S. at 317-18* ("[In reading regulatory statutes] form should be disregarded for substance and the emphasis should be on economic [**14] reality." (quotation marks and citation omitted)).

Here, Commerce's decision to infer a more than *de minimis* but otherwise unspecified separate rate for the investigation, using instead the cash deposit rates from the first administrative review, as limited by the provisional measures deposit cap, is within a reasonable construction of the statute.[18] That "any reasonable method" is available to Commerce, not just the expected method, indicates the statute contemplates the possibility of a more than *de minimis* separate rate even where, as here, all individually investigated rates are zero. See *19 U.S.C. § 1673d(c)(5)(B)*. Further, while in most circumstances Commerce would need a specific separate rate for the investigation, so that [**15] an AD duty can be assessed (or not) with publication of an AD duty order, see *19 U.S.C. § 1673e*, that is not the case here. Because Commerce has already calculated rates for some Plaintiffs from the first administrative review (based on their actual sales experience, not the assortment other companies' *de minimis* and AFA rates otherwise available in this investigation), and these rates will apply to the period at issue regardless, see *19*

*U.S.C. § 1675(a)(2)(C)*), Commerce has established rates "reasonably reflective of potential dumping margins" for the separate rate respondents. See SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201. Accordingly, **[*1385]** Commerce's method is not *per se* unreasonable.

## II. Commerce's Methodology in the Context of the Record

### A. Commerce's Inference that the Separate Rate is More Than De Minimis

In the investigation, 110 companies did not respond to Commerce's [**16] Q&V questionnaire. Second Redetermination, ECF No. 52, at 4. Commerce assumes that, when a company so completely fails to participate, it has made "a knowing and rational decision" not to respond "based on which choice will result in the lower rate." Id. at 5 (citations omitted). Commerce is permitted to make this assumption, see *Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002)* (citing *Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990)*),[19] and Plaintiffs have not offered evidence sufficient to suggest that Commerce is wrong in doing so here.[20]

This rational actor assumption is the core of the well-worn presumption that allows Commerce to use AFA against non-cooperating respondents, see *19 U.S.C. § 1677e(b)*, thereby shifting the burden of production[21] and incentivizing future cooperation.[22] Similar but distinct, this same rational

---

[18] Contrary to Plaintiffs' arguments, see Lumber Liquidators Comments, ECF No. 76, at 1-2, this result is not barred by Baroque Timber, ___ CIT ___, 971 F. Supp. 2d 1333. While a redetermination must "compl[y] with the court's remand order," Amanda Foods (Vietnam) Ltd. v. United States, ___ CIT ___, 837 F. Supp. 2d 1338, 1343 (2012) (quotation marks and citation omitted), the court only remanded "for further consideration." Baroque Timber, ___ CIT at ___, 971 F. Supp. 2d at 1346. It did not establish parameters or requirements other than that Commerce be reasonable.

[19] See Tianjin Mach. Imp. & Exp. Corp. v. United States, ___ CIT ___, 752 F. Supp. 2d 1336, 1347 (2011) ("In other words, [Rhone Poulenc] stands for the proposition that a respondent can be assumed to make a rational decision to either respond or not respond to Commerce's questionnaires, based on which choice will result in the lower rate.").

[20] Instead, Plaintiffs only provide alternative speculation. See, e.g., Pls. Comments, ECF No. 69 at 13-15; Fine Furniture Comments, ECF No. 74, at 6.

[21] A presumption is "a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed [**18] fact, until presumption is rebutted." Wilner v. United States, 24 F.3d 1397, 1411 (Fed. Cir. 1994) (quoting Black's Law Dictionary 1185 (6th ed. 1990)). It serves "to allocate the burden of production," Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 n.2 (Fed. Cir. 1997), ideally compelling the party against whom the presumption operates to produce the necessary evidence, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1037 (Fed. Cir. 1992). "Because Commerce lacks subpoena power, Commerce's ability to apply [the AFA presumption] is an important one." Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citation omitted).

[22] See KYD, Inc. v. United States, 607 F.3d 760, 767 (Fed. Cir. 2010) ("[A]n antidumping rate based on AFA is designed to provide respondents with an incentive to cooperate [. . .]." (internal quotation marks and citation omitted)); SAA at 870, reprinted in 1994 U.S.C.C.A.N. at 4199 (explaining that the purpose of the AFA presumption is to encourage future cooperation by "ensur[ing] that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully"). Cf. Mueller Comercial de Mexico,

Case: 15-1899    Document: 40    Page: 62    Filed: 11/04/2015

Page 6 of 9

44 F. Supp. 3d 1376, *1385; 2015 Ct. Intl. Trade LEXIS 6, **16

actor assumption allows Commerce to infer[23] from companies' non-cooperation [*1386] that "[their] dumping margins [**17] during the period of investigation were not zero or *de minimis*, and that, if [Commerce] had received complete information, [it] may have chosen one of these companies as a mandatory respondent." Second Redetermination, ECF No. 52, at 4 (footnote omitted). That is, the 110 non-cooperating respondents would have participated if their rates were zero or *de minimis*, and the gap in the evidentiary record their non-cooperation creates reflects on the separate rate respondents only insofar as it conceals data that would have applied in the calculation of the separate rate. Where, as here, all individually investigated respondents have received a zero rate (or *de minimis* rate, or AFA rate), this gap is effectively dispositive: "if the 110 companies had chosen to cooperate," and one had been selected as a mandatory respondent, "the examined company's rate would have been above *de minimis*" but below AFA, and, pursuant to *19 U.S.C. § 1673d(c)(5)(A)*, "would have been assigned to the separate rate plaintiffs as [the] separate rate in the Final Determination." See Second Redetermination, ECF No. 52, at 6.

Commerce corroborates its inference of a more than *de minimis* separate rate for the investigation with citation to the results of the first administrative review. Second Redetermination, ECF No. 52, at 7, 30. There, Commerce individually investigated three respondents, including Plaintiffs Fine Furniture and [**20] Armstrong, and ultimately found a more than *de minimis* rate for Fine Furniture and a zero rate for Armstrong.[24] Commerce views this as confirmation that dumping occurred during the period of investigation: if dumping occurred during the review, under the discipline of an AD order, it is likely to have also occurred here, without the discipline of an AD order to disincentivize such pricing behavior.[25] While it is true that "each administrative review is a separate segment of proceedings with its own unique facts," *Peer Bearing Co.-Changshan v. United States, 32 CIT 1307, 1310, [*1387] 587 F. Supp. 2d 1319, 1325 (2008)*(quotation marks and citation omitted), and that Commerce cannot consider AD duty rates from other reviews when those rates bear "no rational relationship to any pricing behavior during the [period of review] or to the likely pricing behavior of the recipients of the margin," *Albemarle Corp. v. United States, ___ CIT ___, 931 F. Supp. 2d 1280, 1292 (2013)*,[26] this does not undermine Commerce's determination here. Commerce

---

*S. de R.L. de C.V. v. United States, 753 F.3d 1227, 1234-35 (Fed. Cir. 2014)* (holding that Commerce "must carry out a case-specific analysis of the applicability of deterrence and similar policies," such that the AFA rationale may only be used against a cooperating party where it has the power to "potentially induce" non-cooperating parties to provide requested evidence) (citation omitted); *Fine Furniture, 748 F.3d at 1372-73* ("[A]n adverse inference imposed due to [one party's] failure to cooperate that collaterally [**19] impacts [another party is] proper" because it "has the potential to encourage cooperation from [the first party], or it would at least encourage importers not to deal with [that party] and other non-cooperating exporters."(citing *KYD, 607 F.3d at 768*)).

[23]   See *A.C. Aukerman Co., 960 F.2d at 1037* ("A factual conclusion reached by inference is based on a process of reasoning and experience. A presumption, however, is a method of dealing with proof, normally to give it a greater effect than it would have if it were handled solely by the inferential process.") (alteration, quotation marks and citation omitted); *Changzhou Wujin Fine Chem. Factory Co. v. United States, ___ CIT ___, 942 F. Supp. 2d 1333, 1340 (2013)* ("[F]ailing to cooperate in an antidumping investigation gives Commerce the discretion to draw certain inferences about the uncooperative respondent's pricing practices. [. . .] This, though, is separate and distinct from an adverse inference in which Commerce selects a rate sufficiently adverse to deter noncompliance." (citations omitted)).

[24]   In the preliminary results, Commerce found dumping margins of 0.00, 0.67, 8.85, and 8.87 percent for individually investigated respondents Nanjing Minglin Wooden Industry Co. Ltd. ("Minglin"), Fine Furniture, Zhejiang Layo Wood Industry Co., Ltd. ("Layo Wood"), and Armstrong, respectively. Preliminary Review, 78 Fed. Reg. at 70,268. In the Final Review, Commerce found dumping margins of 0.00, 5.74, and 0.00 for Minglin, Fine Furniture, and Armstrong, respectively (Layo Wood was excluded because of its zero rate in the investigation on remand). *79 Fed. Reg. at 26,714*. Fine Furniture's rate became the separate rate (as the only individually investigated non-*de minimis*, non AFA rate). Id. The final results were subsequently amended, to correct a ministerial [**22] error, changing Fine Furniture's rate to 5.92 percent (with the separate rate revised accordingly). Amended Final Review, 79 Fed. Reg. at 35,315-16.

[25]   Second Redetermination, ECF No. 52, at 30. This distinguishes the instant case from Amanda Foods (Vietnam) Ltd. v. United States, where the court held that it was unreasonable to use in the first review, where there was an AD discipline, rates from the investigation, where there was no AD discipline, because there was evidence on the record that plaintiffs had "changed their pricing behavior so as to comply with the [AD] order." *33 CIT 1407, 1418-21, 647 F. Supp. 2d 1368, 1380-82 (2009)*.

[26]   Cf. Pls. Comments, ECF No. 69, at 31-32; Fine Furniture Comments, ECF No. 74, at 13-15; Armstrong Comments, ECF No. 75, at 15-16; Lumber Liquidators Comments, ECF No. 76 at 9; see also *Final Review, 79 Fed. Reg. at 26,712, 26,714-15*; *19 U.S.C. § 1673d(c)(5)(A)*.

references the first review results as corroboration, not for calculation. The first review serves to confirm that the separate rate respondents' economic reality is more varied and complicated than the mandatory respondent *de minimis* rates here suggest. It confirms that the separate rate respondents merit the closer consideration that keeping **[**21]** them subject to the order affords, some receiving *de minimis* rates and others not. The individually investigated rates for two Plaintiffs, one of which, as the only non-*de minimis* rate, defines the separate rate for five other of the Plaintiffs, bear a rational relationship to the pricing behavior of the recipients of the margin. As the rates at which the entries at issue will be liquidated (as limited by the provisional measures deposit cap), they are also reasonably related to the time period at issue.

Because "the question here is whether the evidence and reasonable inferences from the record support [Commerce's] finding," *Matsushita Electric Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984),* "not whether some other inference could reasonably have been drawn," *Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers, AFL-CIO, 6 F.3d 1511, 1520 (Fed. Cir. 1993),* Commerce's determination holds. Commerce's conclusion that — based on the silence of 110 respondents, the resultant gap in the record, and the mixed results of the first administrative review — the separate rate (and thus Plaintiffs' rate) in this investigation is somewhat more than **[**23]** *de minimis* and less than AFA, while not the only possible inference, is a reasonable inference from the record, and therefore supported by substantial evidence. See *Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).*

*B. Commerce's Refusal to Calculate a Specific Separate Rate*

Having reasonably inferred that the separate rate for the period of investigation is more than *de minimis*, Commerce declined to calculate a specific (higher than *de minimis*) rate for seven of the eight Plaintiffs. Second Redetermination, ECF No. 52, at 7. The agency concluded that "[w]hile it is normally necessary to assign a specific rate to separate rate respondents . . . in this instance, it would be an unnecessary use of administrative and judicial resources" because specific

rates would be without consequence and without use. Id. at 7-8.

Commerce is correct that further precision would be without consequence. In an AD investigation, Commerce calculates dumping margins for respondents and imposes an AD order based on those margins. *Union Steel v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013)* (citing *19 U.S.C. §§ 1673a, 1673b(b), 1673b(d), 1673d(a), 1673d(c)*). Respondents with *de minimis* or zero margins are excluded from the order (and therefore subject to **[*1388]** administrative reviews). See *19 U.S.C. §§ 1673b(b)(3), 1673d(a)(4)*. This exclusion is not premised on a specific rate, but rather whether the rate is *de minimis* or **[**24]** not. Having reasonably inferred that the separate rate is more than *de minimis*, Commerce has made the determination necessary to impose the AD order on Plaintiffs.

Commerce is also correct that a specific rate for the seven Plaintiffs would be without use. This is because "the rate[s] determined in the first administrative review supersede[] the cash deposit rate established in the final determination of the investigation." Second Redetermination, ECF No. 52, at 7 (citing *19 U.S.C. § 1675(a)(2)(C)*). Plaintiffs' entries would have been and will be liquidated at the rates established in the first administrative review (as limited by the provisional measures deposit cap)[27] regardless of whatever non-*de minimis* rate might be assigned to them in the investigation.

Further, **[**25]** contrary to Plaintiffs' arguments,[28] any rate calculated pursuant to this litigation would not affect the provisional measures deposit cap. The provisional measures deposit cap ensures that, for the interstitial period of the investigation — after the preliminary investigation but prior to the issuance of an AD order — importers are not liable for more than the rate set for them at the time of entry. *19 U.S.C. § 1673f(a)*; *19 C.F.R. § 351.212(d) (2014)*. If the AD duty rate set in the first administrative review (or subsequent litigation) is less, the difference between it and the cash deposit, bond, or other security provided at entry, is refunded. If the AD duty rate is ultimately more, then the difference is not owed. *Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1086 (Fed. Cir. 2001).* Because the cap "limits the rate based on the

---

[27]    Plaintiffs suggest that this frustrates the Bestpak requirement that their rate be based on their economic reality, see Armstong Comments, ECF No. 75, at 14-15, that their rate bear "some relationship to their actual dumping margins." Bestpak, 716 F.3d at 1380. However, as the more than *de minimis* rate is corroborated by Plaintiffs' subsequent individually investigated or calculated rates, and those rates will ultimately apply to the entries at issue, see Final Review, 79 Fed. Reg. at 26,714-15; 19 U.S.C. §§ 1675(a)(2)(C), 1673(c)(5)(A), Bestpak is satisfied.

[28]    See Pls. Comments, ECF No. 69, at 6-7.

Case: 15-1899    Document: 40    Page: 64    Filed: 11/04/2015

Page 8 of 9

44 F. Supp. 3d 1376, *1388; 2015 Ct. Intl. Trade LEXIS 6, **25

deposited amount, not an amount that a final determination indicates should have been deposited," *Universal Polybag Co. v. United States, 32 CIT 904, 925, 577 F. Supp. 2d 1284, 1303 (2008)*, this action and its results do not affect the cap. Rather, the cap is set by the amount collected, "[not] the amount that should have been collected." *Id., 32 CIT at 925, 577 F. Supp. 2d at 1303-04*; accord *Yantai Oriental Juice Co. v. United States, 26 CIT 605, 623 (2002)* (not reported in the Federal Supplement) ("[The cap] merely directs how the deposit rate should be used, not how it should be calculated.").

Accordingly, as a specific **[**26]** rate for the seven Plaintiffs would be without use and without effect, in the interest of administrative and judicial economy,[29] it was reasonable for Commerce to decline to calculate a more specific rate for this investigation.

*C. Commerce's Decision to Individually Investigate Changzhou Hawd*

Having inferred that the separate rate for the investigation is more than *de minimis*, but declining to calculate a specific **[*1389]** separate rate in favor of rates from the first administrative review, Commerce determined it was necessary to conduct an individual investigation of the one Plaintiff that did not receive a rate in the first administrative review, Changzhou Hawd. Changzhou Hawd has certified no shipments of subject merchandise for the period of the first administrative review, and therefore has no calculated rate for that period. *Final Review, 79 Fed. Reg. at 26,713.* Commerce believes that "with the very limited information currently on the record, [it] is unable to calculate a dumping rate based on Changzhou Hawd's own economic reality" without a full individual investigation. Second Redetermination, ECF No. 52, at 8-9; see also Third Redetermination, ECF No. 107, at 17 (concluding that anything short of a full investigation **[**27]** would not be practically or legally feasible). Plaintiffs challenge this determination as arbitrary and capricious.[30]

While the decision to reopen the record is generally within the agency's discretion, see *Essar Steel, 678 F.3d at 1277-78*, that discretion cannot be exercised in a manner that is arbitrary and capricious. See *Changzhou Wujin Fine Chem., 701 F.3d at 1377* (citing *Bowman Transp., 419 U.S. at 284*). Arbitrary and capricious is a "narrow" standard of review, but still "searching and careful." *Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)*. Commerce must "articulate a rational connection between the facts found and the choice made." *Bowman, 419 U.S. at 285* (quotation marks and citation omitted). The agency's decision cannot have "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [be] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)*.

Here, Commerce has decided to conduct an individual investigation of a single separate rate respondent in the third iteration of a much-contested AD determination. Second Redetermination, ECF No. 52, at 8-9, **[**28]** 36-37. This, despite Commerce's emphatic claims of limited administrative resources. Final Determination I & D Mem., cmt. 43 at 110 ("[T]he Department lack[s] the resources required to examine more than three respondents in this investigation."); Second Redetermination, ECF No. 52, at 7-8 (declining to calculate a specific separate rate because of "limited administrative resources"). Moreover, Commerce has repeatedly declined to conduct an individual investigation of another Plaintiff in this investigation, would-be voluntary respondent Fine Furniture, citing lack of resources.[31] Final Determination I & D Mem., cmt. 43 at 110-112; First Redetermination, Consol. Ct. No. 12-00007, ECF No. 132, at 49; Second Redetermination, ECF No. 52, at 37-40; Third Redetermination, ECF No. 107, at 10-11.

**[*1390]** Commerce cannot have it both **[**29]** ways. It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001)* (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given

---

[29]    See USCIT R. 1; *Union Camp Corp. v. United States, 23 CIT 264, 280, 53 F. Supp. 2d 1310, 1325 (1999)*.

[30]    See Pls. Comments, ECF No. 69, at 33-36; Lumber Liquidators Comments, ECF No. 76, at 5-7.

[31]    Commerce received multiple voluntary respondent requests in this investigation, all of which it denied. Preliminary Determination, 76 Fed. Reg. at 30,658 (noting voluntary respondent requests from Fine Furniture, Armstrong, Shanghai Lizhong Wood Products Co., Ltd., and Dun Hua City Jisen Wood Co., Ltd.); Final Determination I & D Mem., cmt. 43 at 110 (declining to individually investigate more than the three mandatory respondents).

44 F. Supp. 3d 1376, *1390; 2015 Ct. Intl. Trade LEXIS 6, **29

manner." *State Farm, 463 U.S. at 48* (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement.

Commerce asserts that because the current record has only "very limited information" on Changzhou Hawd (specifically, only "aggregate [Q&V] data and Changzhou Hawd's separate rate application"), Commerce "is unable to calculate a dumping rate based on Changzhou Hawd's own economic reality" without a full investigation. Second Redetermination, ECF No. 52, at 9. While Commerce is correct that a separate rate respondent's AD duty rate must be reasonably related to its economic reality, *Bestpak, 716 F.3d at 1380*, that cannot reasonably be said to necessitate a full individual investigation in every instance. If Commerce can, indeed must, tie an AFA rate to the recipient's actual dumping margin,[32] where, by definition, Commerce cannot conduct a meaningful, let alone full, investigation to establish a rate,[33] it cannot be impossible **[**30]** to do the same for a fully cooperative separate rate respondent with the record evidence present here and Commerce's continued ability to reasonably reopen the record.[34] Cf. *Amanda Foods (Vietnam) Ltd. v. United States, ___ CIT ___, 774 F. Supp. 2d 1286 (2011).*

Commerce also believes that it is statutorily impossible for it to do anything less than a full investigation. Third Redetermination, ECF No. 107, at 8-9, 17. But this does not comport with the plain language of the applicable statute. Commerce is only obliged to use "any reasonable method" to calculate a separate rate. *19 U.S.C. § 1673d(c)(5)(B).* Commerce's internally inconsistent rationalization is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm, 463 U.S. at 43.*

Commerce now has both an investigation and **[**31]** first administrative review, each with three fully cooperative individually investigated respondents. Second Redetermination, ECF No. 52, at 3-4; *Final Review, 79 Fed. Reg. at 26,713.* It has denied multiple voluntary respondent applications, Preliminary Determination, 76 Fed. Reg. at 30,658; Final Determination I & D Mem., cmt. 43 at 110, but still has an evidentiary record much more robust than would be available in a typical investigation. In this context, while Commerce retains the discretion to reasonably reopen the record, its decision to conduct a full individual investigation of Changzhou Hawd at such a late date is arbitrary and capricious.

**[*1391]  CONCLUSION**

While it is reasonable on this record for Commerce to infer that the separate rate is more than *de minimis*, and to decline to calculate a specific rate in favor of those already calculated for the first administrative review, it is arbitrary and capricious for Commerce to now launch an individual investigation of Changzhou Hawd.

Accordingly, this matter is affirmed in part and remanded in part to Commerce for further consideration in accordance with this opinion. Commerce shall have until March 24, 2015 to complete and file its remand redetermination. Plaintiffs shall have until April 7, 2015 to file comments. Defendant **[**32]** and Defendant—Intervenor shall have until April 17, 2015 to file any reply.

IT IS SO ORDERED.

/s/ Donald C. Pogue

Donald C. Pogue, Senior Judge

Dated: January 23, 2015

New York, NY

---

[32]    Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1325 (Fed. Cir. 2010).

[33]    See 19 U.S.C. § 1677e(b) (allowing application of AFA only when an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information").

[34]    See Bestpak, 716 F.3d at 1380 ("Even with determinations of an AFA-rate, Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin. Likewise, rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins.") (citing Gallant Ocean, 602 F.3d at 1323).

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

11/4/2015

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
     (by email or CM/ECF)

Gregory S. Menegaz

/s/ Gregory S. Menegaz

Name of Counsel                                    Signature of Counsel

Law Firm      deKieffer & Horgan, PLLC

Address      1455 Pennsylvania Ave NW, Suite 900B

City, State, ZIP      Washington, DC 20004

Telephone Number      (202) 783-6900

FAX Number      n/a

E-mail Address      gmenegaz@dhlaw.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

**Form 19**

FORM 19.   Certificate of Compliance With Rule 32(a)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑     The brief contains [     8,240     ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐     The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑     The brief has been prepared in a proportionally spaced typeface using [     *Microsoft Office Word 2007*     ] in [     *size 14 Times New Roman font*     ], or

☐     The brief has been prepared in a monospaced typeface using [     *state name and version of word processing program*     ] with [ [     *state number of characters per inch and name of type style*     ].

/s/ Gregory S. Menegaz

_____

(Signature of Attorney)

Gregory S. Menegaz

_____

(Name of Attorney)

Representing Appellants

_____

(State whether representing appellant, appellee, etc.)

November 4, 2015

_____

(Date)

Reset Fields